Willis ROGERS, Administrator of the Estate of Willis Ray Rogers, Deceased, Respondent,

v.

Patrick FIANDACA, III, Administrator of the Estate of Wilma Sue Burns, Deceased, Appellant.

No. 56368.

Supreme Court of Missouri, Division No. 2.

March 12, 1973.

NINIAN M. EDWARDS, Special Judge.

On the 11th of May, 1968, a certain 1967 Mustang automobile left a country road while attempting to cross a bridge over a drainage ditch. The incident resulted in ·the death of five young people including Willis Ray Rogers, Jr. and Wilma Sue Burns. There were no known eyewitnesses to the event and there were no survivors. Wilma Sue Burns, the decedent, was at the date of her death more than twenty-one years of age and she left no surviving spouse or minor children. She did, however, leave surviving her, her mother, Mrs. Willie Blake and a stepfather, Glendal Blake.

The plaintiff-respondent (hereinafter referred to as plaintiff) as administrator of the estate of Willis Ray Rogers, Jr., deceased, filed a wrongful death action against the administrator of the estate of Wilma Sue Burns, deceased, appellant (hereinafter referred to as defendant). The defendant also filed a wrongful death action by way of counterclaim against the plaintiff. In plaintiff's petition it is alleged that the defendant's decedent was negligent in the operation of the automobile that left the travel portion of a bridge over a drainage ditch causing the death of the plaintiff's decedent. In the defendant's counterclaim he alleged that his decedent, Wilma Sue Burns, was riding as a passenger in the Mustang automobile that was being driven and operated by the plaintiff's decedent, Willis Ray Rogers, Jr. and that as a result of his negligence the automobile was caused to leave the travel portion of the bridge over the drainage ditch and to cause the death of defendant's decedent, Miss Burns.

Before the trial a stipulation for dismissal was filed wherein it was recited that the plaintiff's petition be dismissed with prejudice because plaintiff's petition had been fully compromised and settled and it was further stipulated that the counterclaim pending should not be affected by

———◆———

Joe T. Buerkle and Albert C. Lowes, Buerkle, Buerkle & Lowes, Jackson, for respondent.

Manuel Drumm, Sikeston, for appellant, Patrick Fiandaca, III.

this settlement because the defendant expressly reserved the right to pursue the counterclaim in the cause.

At the trial of the cause on the counterclaim the plaintiff filed a motion in limine wherein the plaintiff moved the court prior to the beginning of the trial on defendant's counterclaim to make and enter an order prohibiting the defendant from in any way referring to certain alleged facts during the presentation of defendant's case on his counterclaim. These alleged facts were that the parents of plaintiff's decedent, Willis Ray Rogers, Jr., were alleged to have made the following statements: "Don't worry about the children as they went to the store and Mrs. Rogers thought Willis Ray, Jr. was driving the car"; "Sue gave the keys to Willis Ray and they went out the door"; "Don't you and Willie worry about the kids, Ray is driving the car and everything will be all right"; "Don't worry about the kids because Sue asked Ray if he wanted to drive the Mustang and Sue handed Ray the keys"; and "Sue said to Ray, 'We'll take my car and you can drive' and then handed him the keys." The motion further alleges that these statements were reportedly made to persons all of whom were defendant's decedent's relatives, who were not parties to the litigation. As grounds for the motion the plaintiff contended that the alleged statements were not made to a party to the action but to strangers to the action; that they were self-serving; that they constituted rank hearsay; that they would not be competent, relevant or material or tend to prove the issue of who was driving the Mustang automobile; and that if they were referred to during the trial of the case they would prejudice the jury against the plaintiff and that any instruction given by the court to disregard or to strike such testimony would be ineffectual and of little use.

The parties then stipulated and agreed that certain witnesses, if called, would testify as follows: Willis Rogers, father of Willis Ray Rogers, Jr., deceased, and administrator of his estate would testify that his said son met his death in an automobile accident and that on the day of the incident that the defendant's decedent, Wilma Sue Burns, came to the Rogers' home in a Mustang car; that Mason Yarborough, Mary Beth Rogers, Karen Sue Galloway and Willis Ray Rogers, Jr., were also present at the Rogers' home; that during the evening that all five of the aforementioned persons decided to go to the grocery store to obtain soda and other light groceries; that at the time the five left the house in the Mustang car that he, Willis Rogers, did not know who was driving and did not see the five people enter the automobile. He did hear Wilma Sue Burns ask his son, Willis, Jr., if he wanted to drive and Willis said, "No", and further that he would sit in the back with Karen Galloway.

Elizabeth Rogers would testify that she was the mother of Willis Ray Rogers, Jr., and that she was home on the evening of May 11th when the five persons came to her home and that during the evening they decided to buy soft drinks and snacks and they left; that the defendant's decedent, Wilma, asked her son, Willis, if he wanted to drive but that he replied that he would get in the back seat with Karen and that Wilma stated that she would take her purse because her driver's license was in it; that five persons left their home, also that about five minutes later she had a telephone conversation with the defendant's decedent's mother, Mrs. Blake, wherein she told Mrs. Blake that Wilma Sue wanted to take her two children, the Yarborough boy and the Galloway girl riding in her new Mustang.

Glendal E. Blake, the step-father of the defendant's decedent, would testify that Willis Rogers (the father) came to the Myers' home in the early morning of the day after the incident, that is May 12th, and Rogers told him not to worry as Ray was driving. He would also testify that later that same morning that Elizabeth Rogers told him that Wilma Sue Burns,

his step-daughter, had asked her son, Willis, if he wanted to drive and that then she gave her car keys to the Rogers boy. He would also testify that this statement was repeated four or five times by Elizabeth Rogers, the mother of Willis.

Sherry Lynn Williams, age 17 and cousin of the decedent Wilma Sue Burns, would also testify that she heard Willis Rogers, Sr., tell Mr. Blake, the step-father, that Wilma Sue told Willis Jr. he could drive her car and gave Willis Jr. the car keys.

Gertrude Myers, age 71 and grandmother of Wilma Sue, would also testify that Willis Sr. came to her home early on the morning of May 12th, the day after the incident, at which time he told her that Wilma Sue had given the car keys to Willis Jr. and told him to drive; also that Elizabeth Rogers, Willis Jr.'s mother, later told her that she didn't know who was driving the car at the time of the accident.

The parties also stipulated to the fact that the accident occurred some 2.0 miles from the Rogers' home and there were certain stipulations as to the funeral bills and as to the amount of money earned by Wilma Sue and as to the amount that she contributed to her mother.

The plaintiff then filed a motion for a directed verdict at the close of the defendant's case which raised the points that with the evidence as stipulated that there would be insufficient legal proof to show that Willis Ray Rogers, Jr. was driving the Mustang automobile on May 11th when the defendant's decedent came to her death; that the defendant, the administrator of the estate of Wilma Sue Burns, was without standing to bring this suit for wrongful death under the provisions of § 537.080, RSMo 1969, V.A.M.S. Further, it was alleged in the motion that there was insufficient proof to prove that Willis Ray Rogers, Jr. was driving the car on the night in question unless resort be had to the after-the-fact hearsay statements allegedly made on the part of Willis Ray Rogers, Sr.

in his individual capacity or Elizabeth Rogers, his wife; that such type of alleged statements were not admissible to prove the fact that Willis Ray Rogers, Jr. in fact, was driving the car and further that even if these statements were offered for the limited purpose of impeachment that they could not be used as substantive evidence to prove the essential elements of the defendant's counterclaim.

The trial court sustained both the motion in limine and the motion for a directed verdict.

It is essential that we first decide whether or not the administrator of the estate of Wilma Sue Burns was the proper party to bring this cause of action under § 537.080, V.A.M.S.1969. Plaintiff contends that he is not. He argues that since Wilma Sue Burns was an adult, unmarried person, without surviving children but with a surviving mother, that the administrator did not have the right to file this action and that this action could only be filed by Wilma Sue's mother as her survivor. We do not agree with the plaintiff's contention in this regard as we believe the statute does provide that the right of action is in the administrator in the case where an adult dies without surviving spouse or minor children. Section 537.080 gives the cause of action to certain designated people, as follows:

"(1) By the spouse or minor children, natural or adopted, of the deceased, either jointly or severally; provided, that in any such action the petitioner shall satisfy the court that he has diligently attempted to notify all parties having a cause of action under this subdivision; and provided, further, that only one action may be brought under this subdivision against any one defendant; or

"(2) If there be no spouse or minor children or if the spouse or minor children fail to sue within one year after such death, or if the deceased be a minor and unmarried, then by the father and mother, natural or adoptive, who may

join in the suit, and each shall have an equal interest in the judgment; or if either of them be dead, then by the survivor; or if the surviving parents are unable or decline or refuse to join in the suit, then either parent may bring and maintain the action in his or her name alone, for the use and benefit of both such parents; or

"(3) If there be no husband, wife, minor child or minor children, natural born or adopted as herein indicated, or if the deceased be an unmarried minor and there be no father or mother, then in such case suit may be instituted and recovery had by the administrator or executor of the deceased and the amount recovered shall be distributed according to the laws of descent."

Examining the above we note that under Subsection 2, if the defendant had been a minor, clearly the right of action for her wrongful death would be in her mother because the statute provides for the surviving parents to have the cause and even provides for the situation where one of the parents refuses or declines to join in the action. Our reasoning here is certainly consistent with the prior holding in the case of Sterns v. M.F.A. Mutual Insurance Company, 401 S.W.2d 510 (Mo.App.1966), wherein it was held that where the decedent was a *minor* that the *only* persons with a cause of action were the surviving parents.

■ An examination of Subsection 3 indicates that the Legislature intended such section to cover the very situation that is presented in the case at bar. Here we have an unmarried young lady who is an adult and who is survivied by her mother and who is not survived by minor children. This subsection states that in such a circumstance that suit may be instituted and recovery had by the administrator of the decedent's estate. As a matter of fact, there is no provision in this subsection for the parent to file suit at all. This subsection, it should be noted, also covers the situation where there was an unmarried minor with no surviving parents and the cause again is given to the administrator. The plaintiff argues that the Legislature must have intended that the surviving parent file the action for an unmarried adult as in the case at bar. In this, we disagree, for it seems far more logical to conclude from the language of the statute that the administrator should indeed file the action where the decedent is an unmarried adult without surviving children. This we believe is just what the Legislature intended by the language of the Subsection 3 of the statute. Thus, we believe and we find that under the provisions of this statute that the administrator here, Patrick Fiandaca, did have the cause of action for the wrongful death of the decedent Wilma Sue Burns and he is the proper party.

■ Thus, having found the proper party filed the counterclaim for the defendant we move on to the question of whether or not the trial court erred in granting the motion in limine and the motion for directed verdict at the close of the defendant's case on his counterclaim. Defendant contends that the trial court erred because it would not consider the prior inconsistent statements of plaintiff-decedent's parents as substantive evidence that plaintiff-decedent was driving the death car. He argues that these prior inconsistent statements should be considered for more than impeachment purposes only. He points out that in this case there is a lack of first-hand evidence as to who was the driver of the automobile when it left the bridge. Further, that he had to call plaintiff-decedent's parents as he had no other source of evidence on this point.

The whole question devolves itself into a request by the defendant that we re-examine and change the law in Missouri on the effect of prior inconsistent statements in the trial of a case. In urging this change we are cited the case of Jett v. Commonwealth, Ky., 436 S.W.2d 788, from our neighboring state of Kentucky. In the Jett case the court re-examined the question of

the effect of prior inconsistent statements and held that in addition to considering such statements for the purpose of impeaching the witness, that the Kentucky court would receive these out-of-court statements as substantive evidence and affirmative evidence of the facts stated. Missouri has long held the other way as do a majority of the states. We are not constrained to change the law of Missouri in this regard as we are not persuaded that our present rule is inconsistent with the effective and more time-honored way of treating prior inconsistent extrajudicial statements. Some years ago in the case of Pulitzer v. Chapman, 337 Mo. 298, 85 S. W.2d 400 (1935), this court en banc held that where there were prior inconsistent statements in a deposition that this court would permit the deposition to be used not only for impeachment purposes but also as substantive proof of the facts stated. In the Pulitzer case this court allowed such a rule only after observing that the witness was under oath when the deposition was given and that the litigants on both sides were present and had opportunity to examine the witness on the issues. This court in the Pulitzer case refused to extend the rule to prior unsworn oral statements. We do not find the stability of a deposition to be present in the alleged extrajudicial unsworn prior inconsistent statements proffered here. We do not believe the reasoning of the Jett case to be persuasive, even though in this case, to resort to such statements may be the only avenue open for the parties on the issue of determining the driver of the car. The law in this state has been this way for many years. See Woelfle v. Connecticut Mut. Life Ins. Co. of Hartford, Conn., 234 Mo.App. 135, 112 S.W.2d 865, decided in 1938, and Fisher v. Williams, 327 S.W.2d 256, decided by this court in 1959. In these cases it is noted that the decided weight of authority is to the effect that where the use of prior inconsistent statements becomes proper to impeach a witness by proof of his prior contradictory extrajudicial statements, that nevertheless such statements are hearsay and they are admissible *only* for the purpose of impeachment and are not to be taken as substantive and affirmative proof of the facts stated therein.

We believe that the law as recited in the Pulitzer, Woelfle and Fisher cases, supra, not only represents the weight of authority but is better reasoned and therefore we choose to continue to follow it.

Having found no error in the ruling and findings of the trial court, the judgment below is affirmed.

MORGAN, P. J., and DONNELLY, J., concur.

HENLEY, J., dissents in separate dissenting opinion filed.

HENLEY, Judge (dissenting).

I have the view that the right of action for the wrongful death of Wilma Sue Burns is in her mother to the exclusion of the administrator of her estate.

Section 537.080, RSMo 1969, V.A.M.S., supplanted § 537.070, which was repealed in 1955,[1] and gives, as did § 537.070 and its predecessors, a right of action for wrongful death where none existed at common law. In addition, it provides, as did § 537.- 070, to whom the right of action for damages survives and sets up priorities among those persons. As enacted in 1955, subsection (3) of § 537.080 had reference solely to actions for the wrongful death of unmarried minors and gave the right of action to the surviving parent or parents; rights of action for any other persons was in the husband or wife, (subsection (1)); the minor child or children (subsection (2)); or, if there be no husband, wife, minor child or children, or if deceased be an unmarried minor and there be no father or

---

1. Laws of 1955, p. 778, § 1.

mother, then in the administrator or executor (subsection (4)).

In the 1967 amendment,[2] insofar as it related to the right of action of the husband or wife or minor child or children, subsections (1) and (2) of the 1955 law were combined or consolidated into one subsection, subsection (1). Further, in the drafting of the 1967 amendment to this section, what had been subsection (3) of the 1955 law having reference solely to actions for wrongful death of an unmarried minor, became subsection (2) and in the process of amendment there was added to this subsection a right of action by the mother and father for the wrongful death of *any person*, not a minor, who is not survived by a spouse or minor children. In the 1967 amendment the same right of action for the wrongful death of *any person* (including the right of action for death of unmarried minors not survived by mother or father) not survived by a spouse or minor child or children, is also given to the executor or administrator, subsection (3). In other words, subsections (2) and (3) give a right of action to both the mother or father and the executor or administrator for the wrongful death of *any person,* not a minor, who is not survived by a spouse or minor children.

However, because of the history of this section and decisions of the courts prior to the 1967 amendment, I doubt that the general assembly intended to vest the right of action in two classes of persons at the same time. The general assembly no doubt intended that one class have priority over the other, and that that class was the first named. I would so hold. Consequently, I would hold that the mother or father, as the first class named (subsection (2)), has prior right to the action over the executor or administrator, the second class named (subsection (3)).

For the above reasons, I respectfully dissent.

2. Laws of 1967, p. 663, § 1.