Mary E. CRANE and Nathan Douglas Crane, by his next friend, Mary E. Crane, Appellants,

Aetna Casualty & Surety Company, Intervenor,

v.

Hobert Fred RIEHN, Macke's Farm Service, Larry McGowan, Respondents.

No. 59686.

Supreme Court of Missouri, En Banc.

July 24, 1978.

John Reid, II, Schnapp, Graham & Reid, Fredericktown, for appellants.

David G. Beeson, Albert C. Lowes, Buerkle, Buerkle & Lowes, Jackson, Donald P. Thomasson and Paul V. Gilbert, Jackson, Thomasson, Dickerson & Gilbert, Cape Girardeau, for respondents.

RENDLEN, Judge.

Larry Edward Crane, fatally injured in a highway accident on September 15, 1969,[1] was survived by his parents, whom he did not support, and his pregnant wife, the plaintiff, Mary Crane. On April 27, 1970,

---

1. While driving a truck south on U. S. Highway 61 in Perry County, Crane was blinded by the lights of a following vehicle. He stopped, dismounted and was walking back toward the following vehicle driven by defendant McGowan (who apparently had stopped, although the record is not clear on this point) and was fatally struck by a northbound tractor trailer unit operated by the defendant, Riehn, the agent-driver of defendant, Macke's Farm Service.

almost seven and one-half months following the accident, Mary Crane gave birth to her son, the plaintiff, Nathan Douglas Crane.

Plaintiffs filed their petition for wrongful death August 20, 1971, twenty-three months following the fatality, but decedent's parents have not joined in this proceeding nor have they brought a separate action to secure their interests. All defendants denied liability alleging contributory negligence and defendant McGowan, not served until March of 1975 (more than five years after Crane's death), moved to dismiss alleging the bar of § 537.100, RSMo 1969.[2] After the decisions of this Court in *State ex rel. Kansas City Stock Yards v. Clark,* 536 S.W.2d 142 (Mo.banc 1976) and *Selsor v. Zenith Radio Corporation,* 536 S.W.2d 157 (Mo.banc 1976), defendants amended their pleadings alleging that decedent's parents survived him, a fact admitted by plaintiffs, and moved to dismiss for the reason the action had not been brought within one year following the death. Defendants' motions were sustained and from the order of dismissal plaintiffs appealed.

■ Under § 537.080, RSMo 1969, as interpreted by this Court in *Kansas City Stock Yards* and *Selsor, supra* in 1976, and more recently in *Edmonsond v. Lakeside Hospital Association,* 562 S.W.2d 361 (Mo. banc 1978), the claim for wrongful death accrued on the date of death vesting in decedent's minor child and spouse who, because decedent's parents survive, were obliged to appropriate their preferred right of action by filing suit within one year from the date of death or failing so to do the claim passed to and vested in decedent's parents.

■ We first consider the fact that plaintiff Nathan Douglas Crane was born seven months after his father's death and its ef-

fect on plaintiff's right of action. The class of persons described as parties entitled to maintain an action in subsection 537.080(2) as "spouse or minor children" who must "sue within one year [if deceased is survived by a parent or parents] after such death" does not expressly include children born subsequent to the death. Assuming, arguendo, the class includes such post-born minor and that the one year period was extended by the birth of decedent's son seven and one-half months following "such death", he nevertheless failed to commence suit within one year after his birth, April 27, 1970. Thus (though we do not rule the point), if the one year period were extended, at least as to Nathan's claim, the cause of action if separable in the minor was extinguished April 27, 1971, almost four months before suit was brought. See *Wessels v. Gipfel,* 522 S.W.2d 653, 656 (Mo.App. 1975). It cannot be said that plaintiffs appropriated their cause of action because they "failed to timely perfect an essential element of their claim for relief." *Edmonsond v. Lakeside Hospital Association, supra* at 363. Under § 537.080 the suit was properly dismissed.

Seeking to preserve their right of action, plaintiffs assert that the statute is violative of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States and Art. I, § 2 of the Missouri Constitution because it discriminates between (1) that class of minor children and/or spouse of a decedent survived by one or both of his parents and (2) that class of minor children and/or spouse of a decedent not survived by parent or parents. The former is subject to the one year limitation of § 537.080(2), but not the latter, which is limited only by the two year term of § 537.100.

---

**2.** All statutory references are to RSMo 1969, unless otherwise cited.

Pertinent portions of § 537.100, RSMo 1969, are as follows: "Every action instituted under section 537.080 shall be commenced within two years after the cause of action shall accrue; provided, that if any defendant, whether a resident or nonresident of the state at the time any such cause of action accrues, shall then or

thereafter be absent or depart from the state, so that personal service cannot be had upon such defendant in the state in any such action heretofore or hereafter accruing, the time during which such defendant is so absent from the state shall not be deemed or taken as any part of the time limited for the commencement of such action against him; . . . "

In this regard it is important that § 537.080, creating the referenced classes of claimants, does not establish differences within a class and it is generally held that legislative classification of the type here considered is not prohibited by the equal protection clauses of the United States and State Constitutions "if all within the same class are included and treated alike." *Brawner v. Brawner,* 327 S.W.2d 808, 815 (Mo.banc 1959). While the general purpose of the cited constitutional provisions is to prevent invidious discrimination, the creation of unequal rights between classes (not otherwise suspect) is permissible unless such classification rests upon grounds irrelevant to the achievement of the State's objective or not reasonably related to the legislative purpose. *Gem Stores, Inc. v. O'Brien,* 374 S.W.2d 109, 117 (Mo.banc 1964); *Petitt v. Field,* 341 S.W.2d 106, 109 (Mo.1960). These principles were discussed in some detail in *Ballentine v. Nester,* 164 S.W.2d 378, 383 (Mo.banc 1942) as follows:

" 'There is therefore no precise application of the rule of reasonableness of classification, and the rule of equality permits many practical inequalities. And necessarily so. In a classification for governmental purposes, there cannot be an exact exclusion or inclusion of persons and things.' It is 'sufficient to satisfy the demand of the Constitution if a classification is practical and not palpably arbitrary.' *Louisville and Nashville R. R. v. Melton,* 218 U.S. 36, loc. cit. 55, 30 S.Ct. 676, 54 L.Ed. 921 [47 L.R.A., N. S., 84]. 'The selection, in order to become obnoxious to the fourteenth amendment, must be arbitrary and unreasonable, not merely possibly, but clearly and actually, so.' *Bachtel v. Wilson,* 204 U.S. 36, loc. cit. 41, 27 S.Ct. 243, 245, 51 L.Ed. 357. Again, 'a classification may not be merely arbitrary, but necessarily there must be great freedom of discretion even though it result in ill-advised, unequal, and oppressive legislation.' *Heath & Milligan Mfg. Co. v. Worst,* 207 U.S. [338], loc. cit. 354, 28 S.Ct. 114, 119, 52 L.Ed. 236; . . . " (Other citations omitted.)

The question for us is whether the classification of claimants within the framework of the wrongful death statutes bears a reasonable relation to the legislative intendment.

We must remember there was no right of action for wrongful death at common law and only by virtue of statutory enactment did it become possible to recover upon such claims. In *State ex rel. Kansas City Stock Yards v. Clark,* l. c. 144, the Court, nothing that the wrongful death statutes had been "amended and reenacted in 1967," quoted from *Wessels v. Gipfel, supra* at 656:

"There was no change in the basic theory of the Wrongful Death Act. The class of persons who had first priority to sue was changed, the time in which they were permitted to sue was extended to one year, and the maximum period in which any suit could be brought was extended from one year to two years. Therefore, the construction of the Wrongful Death Act prior to the 1967 amendments which resulted in the present Act is applicable to the present Act, subject only to the changes made in the definition of classes and the lengthening of the periods of limitation."

In its critical analysis that followed, the Court pointed out that the Act provides for one indivisible death claim, vesting first in the spouse and minor children, either jointly or severally, and if the deceased left surviving a father or mother, the spouse and minor children must exercise their preferred right by filing suit within one year from the date of death. If however, the spouse and minor children fail to sue within one year, the claim passes to and vests in the father and mother or the survivor. If there is no father and/or mother, the spouse and minor children have the full two years in which to sue. Further, if there is no spouse or minor children, the father and mother may sue at any time within the two year period and the party having the right to enforce the claim has absolute control thereover during the period specified and may bring an action or settle without suit. In addition, when appropriated by one of the preferred classes of beneficiary, the

claim terminates the rights of any others mentioned in the statute with the exception that if the person so appropriating dies during the limitation period without having completed enforcement, the next alternative claimant may file within the two year limitation period. Finally, as provided in § 537.080(3), if there be no husband, wife, minor children or others of the classes designated in the preceding subsection, ". . . then in such case suit may be instituted and recovery had by the administrator or executor of the deceased and the amount recovered shall be distributed according to the laws of descent." In addition to these interpretative statements of § 537.080, we examine the provisions of § 537.090, RSMo Supp. 1975, which speaks to damages for wrongful death. That section requires such damages shall be awarded "as will fairly and justly *compensate* such party or parties for *any damages he or they have sustained* and are reasonably certain to sustain in the future as a direct result of such death." (Emphasis ours.) Considering sections 537.080–537.100 in their entirety, there emerges a clear legislative intent to provide damage claims for those classes we normally would expect to find most affected by the death of a family member in descending order of their dependence. This is not to say that in every class the level of dependence must or does follow the legislative pattern but such variants, stemming from statutory underinclusiveness or inability to foresee all possible fact combinations, do not chill the constitutional validity of the legislative scheme. This pattern is seen in the fact that the spouse and minor children constitute the class given priority for first appropriation of the claim, followed by the parents of the decedent and thereafter by the administrator or executor for the benefit of those entitled to a share of the decedent's estate under the laws of descent. Such arrangement roughly parallels the pattern of intestate succession under the probate code. As noted above, such action was unknown at common law and came into being only when the legislature deemed it desirable to create the right and nominate those entitled to sue. A class was established consisting of the spouse and minor children who, by virtue of their relationship with the deceased and probable dependence upon him, have a special or preferred right to bring such action in the first year to the exclusion of the parents (if then living), adult children (if any), and any others, regardless of their degree of consanguinity. For purposes of defendants' equal protection argument, this "first" class has been compared to another, consisting of spouse and minor children whose decedent leaves no parents living, whose members have two years in which to bring the action. Though several classes have been created by the statute, no distinction has been drawn between members within each class. Due regard has been shown to the needs of other classes (e. g., parents of decedent), who might reasonably be expected to experience damage from the death. The order and time of death, as well as the age and probable level of dependence of those in the decedent's immediate family, are concerns clearly considered and balanced by the legislature. For example, any minor child who dies before accrual of the cause of action is eliminated from the class. Similarly, the deaths of a minor claimant's grandparents (i. e., the parents of the deceased), before accrual of the cause of action affects the establishment and nature of the class entitled to sue. Also, a child who attains his majority before his parents' death and who in the usual case is expected to be self-supporting is eliminated from the first class of claimants. These qualifications for class membership are relevant to a discernible legislative purpose. As stated by the United States Supreme Court in *Baxstrom v. Herold,* 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966), "Equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made." 1. c. 111, 86 S.Ct. 1. c. 763. To like effect in *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), the Court discussing an equal protection challenge to the Federal Aid to Families With Dependent Children Program states at page

485, 90 S.Ct. at page 1161: "In the area of economics and social welfare a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'" The Court further observed that "[t]he problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific," and that "[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it," citing *McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961).

We must decide whether the classifications adopted in the Act rest upon some real difference "which bears a reasonable and just relation to the act in respect to which the classification is proposed." *State ex inf. McKittrick ex rel. Ham v. Kirby,* 349 Mo. 988, 163 S.W.2d 990, 994 (Mo.banc 1942); *Kansas City v. Webb,* 484 S.W.2d 817 (Mo.banc 1972), cert. denied, 409 U.S. 851, 93 S.Ct. 62, 34 L.Ed.2d 93; *State v. Ewing,* 518 S.W.2d 643 (Mo.1975). It should be emphasized that the classification of those entitled to sue under the wrongful death statute does not involve interference with the exercise of a "fundamental" right nor discriminate as to classes having the "traditional indicia of suspectness" for equal protection considerations. The designated classes are "not saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritorian political process." *San Antonio Independent School District v. Rodriquez,* 411 U.S. 1, l. c. 28, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16 (1973). In that case suit was brought on behalf of members of poor families residing in districts with low property tax bases who made claims that the Texas system of reliance on local property taxation to finance their public elementary and secondary schools favored the more affluent and violated equal protection requirements by producing substantial inter-district disparities in per pupil expenditures. This resulted primarily from differences in the value of assessable property among the districts. The Court held that was not a proper case in which to examine the State's laws under standards of "strict judicial scrutiny" since that test was reserved for those cases involving laws which operate to the advantage of a "suspect class" or interfere with the exercise of "fundamental rights" and liberties explicitly or implicitly protected by the Constitution. So too, in the case at bar no suspect class nor interference with "fundamental right" appears and strict judicial scrutiny is not the proper standard. The Texas system for financing its elementary and secondary schools was found not to violate the equal protection clause of the Fourteenth Amendment.

The number of classes into which our citizens may be constitutionally classified has been described as infinite, and the legislature has chosen to give parents of a deceased the right to sue for his wrongful death during the second year following his death, if the prescribed conditions of the statute occur. It is not constitutionally impermissible that the right of action passes to and vests in the decedent's parents at the beginning of the second year to the exclusion of the minor children and spouse who have not appropriated the action when contrasted with that class in which no parents of decedent survive and whose members may sue during the two year period. Thus we have a variety of claimants classified in various ways and though the statute may be arguably imperfect or underinclusive, such defects or legislative choices do not constitute an impermissible denial of equal protection of the laws. We find that the distinctions between the classes hereinabove described are relevant to the purposes for which the classifications were made and the contention of constitutional invalidity is denied.

■ Appellants' final point is that the statute of limitations provided in § 537.100, RSMo 1969, "was tolled because the defendant Larry McGowan was a nonresident of Missouri at all times on, and after September 15, 1969, and could not be served under the Missouri Nonresident Motorist Statute and could not be served until he was served on March 6, 1975 . . . .." The one year time limitation restricting plaintiffs' rights in this case are found in the provisions of § 537.080, which are independent of the tolling provisions of § 537.100 and the two year limitation provided by that section. As previously discussed, by their failure to appropriate the cause of action plaintiffs failed to perfect an essential element of their claim for relief. The tolling provisions of § 537.100 do not affect the plaintiffs' rights to the cause of action, lost to them under § 537.080(2). The contention is without merit.

The action of the trial court dismissing plaintiffs' action is affirmed.

MORGAN, C. J., and FINCH and DONNELLY, JJ., concur.

BARDGETT, J., dissents in separate dissenting opinion filed.

SEILER, J., dissents and concurs in separate dissenting opinion of BARDGETT, J.

SIMEONE, J., not participating because not a member of the Court when cause was submitted.

BARDGETT, Judge, dissenting.

I respectfully dissent. The plaintiffs are the surviving spouse (Mary) of Larry Crane, deceased, and the posthumous son (Nathan) of Larry and Mary. Nathan was born seven and one-half months after his father Larry was killed, allegedly due to the negligence of two other automobile drivers. Unfortunately for Mary and Nathan, the deceased Larry was also survived by his parents whom he did not support and to whom he owed no duty to support and who did not sue within the two-year-limitation period.

The suit by Mary and the minor child Nathan was filed August 20, 1971, twenty-three months after Larry's death. Here, as in *State ex rel. Kansas City Stock Yards v. Clark,* 536 S.W.2d 142 (Mo.banc 1976), *Selsor v. Zenith Radio Corp.,* 536 S.W.2d 157 (Mo.banc 1976), *Edmonsond v. Lakeside Hospital Assn.,* 562 S.W.2d 361 (Mo.banc 1978), the infants of a deceased and/or a surviving wife or husband are denied the right to sue because the deceased was (unfortunately for the children and spouse) survived by parents even though the parents were owed no duty of support by the deceased, received no support from the deceased and filed no suit, nor did the parents "appropriate" the cause of action in any way at all.

So, this makes the fourth casualty in a short time of a confusing wrongful death statute. The victims (minor children and spouses) are those who suffer most by the death and are often those who simply cannot, because of their infancy, as in this case, protect themselves by bringing a suit within the first year after the death of the father or mother. No one could realistically pretend that in this case Nathan could have done a thing to bring suit and thereby have damages for the loss of his right to support by his father.

The denial of the right to sue to a widow and minor child simply because the deceased also left surviving him, somewhere in this world, a mother or father who have not been damaged, completely distorts the purpose of the law and, in my opinion, produces a result which the court should avoid if at all possible.

The court has previously held that if the deceased did not leave a mother or father surviving then the surviving spouse and minor children have the full two years in which to sue, *Montemayor v. Harvey,* 490 S.W.2d 61 (Mo.1973), *Almcrantz v. Carney,* 490 S.W.2d 59 (Mo.1973), and cases cited therein. This even though the statute does not explicitly provide for the additional year in such circumstances. In the instant case the surviving parents did not sue within the two-year period and, therefore, can never sue. The defendants will not be subject to multiple litigation or multiple claimants of different classes. Therefore, I

would hold that this suit can be maintained by both the surviving spouse and minor child and consider this case the same as if the deceased left no surviving parents.

My views that the origin of wrongful death actions is found in the common law and that such an action existed in Missouri (*James v. Christy,* 18 Mo. 162 (1853)), prior to the first death damage act have been set forth in my dissenting opinion in *State ex rel. Kansas City Stock Yards v. Clark, supra,* at 149–157. See also *Selsor v. Zenith Radio Corp., supra, Montemayor v. Harvey, supra, Almcrantz v. Carney, supra,* and *Edmonsond v. Lakeside Hospital Assn., supra.* For an exhaustive treatise supporting the proposition that such a recovery was allowed at common law, see 1 S. Speiser, Recovery for Wrongful Death 2–28 (2d ed. 1975).

One would think the Missouri general assembly would have given some attention to their wrongful death statute in the past several years in order to correct the obvious injustice being wrought by that law but they haven't done so yet. Just maybe the fact that an infant not yet born at the time of his father's death is forever barred from recovery for the loss of his father because, as I say, unfortunately the father's parents happen to survive him, will get their attention. I hope so. I dissent.