Pinkie L. CANNADA, Individually and for the benefit of herself and Myles Cannada, Respondents,

v.

Joe MOORE, Cleothes Smith and Alex Junior Burden, Appellants.

No. 60989.

Supreme Court of Missouri, En Banc.

March 13, 1979.

Denis C. Burns, James E. Godfrey, Godfrey, Vandover & Burns, Inc., St. Louis, for appellants.

Robert F. Ritter, Thomas C. DeVoto, Gray & Ritter, St. Louis, for respondents.

RENDLEN, Judge.

This wrongful death action was transferred after opinion by the Missouri Court of Appeals, St. Louis District (now Eastern District) under Rule 83.02 that we might reexamine the existing law. The case is decided here as an original appeal, Mo. Const., art. V, § 10; Rule 83.09. Much of the Court of Appeals' opinion by Stewart, J., is utilized without quotation marks.

The decedent, Frank Lee Cannada (Frank), an unmarried adult with no minor children, was killed July 2, 1972. Suit was brought by decedent's mother, Pinkie L. Cannada, individually and for the benefit of Myles Cannada, decedent's father. Frank died as a result of injuries received when the car in which he was riding was struck from the rear by an automobile driven by defendant Burden then being pursued by police authorities. Judgment was entered upon a verdict against three named defendants in the sum of $20,000 and from that judgment Joe Moore (Moore) has appealed. We affirm.

The jury could have found these facts: The accident occurred on Sunday, July 2, 1972, at about 5:00 p. m. on Interstate Highway 55 near its intersection with Missouri Highway 162 in New Madrid County near Portageville, Missouri. Highway I–55 runs generally in a north-south direction, while Highway 162 runs generally east-west and overpasses I–55. Just south of the Highway 162 overpass a ramp leads from the east side of the northbound lanes of I–55, up to the south side of Highway 162, and immediately north thereof a ramp leads down from 162 to the easterly side of the northbound lanes of I–55. At that location I–55 is a four lane highway with the northbound and southbound lanes separated by a grass median. The traffic lanes are 12 feet wide with nine foot asphalt shoulders. At the time of the accident the speed limit was seventy miles per hour and a mist caused the highway to be wet. The northbound lanes of I–55 will be referred to as the right and left lanes for northbound travelers.

At the time of the accident Frank was a passenger in a 1967 Ford, with three other adults and two small children, returning to St. Louis from a trip to Cleveland, Mississippi. They were preceded by a 1970 Chevrolet traveling in a northerly direction occupied by friends of Frank who had also been in Cleveland, Mississippi. Jimmy Whitehead, one of those friends, was driving the 1970 Chevrolet. These cars, traveling in tandem at approximately 50 m. p. h., were in the right lane of I–55.

A short time before the accident defendant Cleothes Smith (Smith), a part-time deputy sheriff of Pemiscot County and a part-time policeman of Hometown, Missouri, had arrested Alex Burden (Burden) for careless driving. While Smith was making

a phone call near the scene of the arrest, Burden escaped and drove north on I–55 toward the overpass of Highway 162. Smith gave chase.

Defendant, Joe Moore, the Chief of Police of Portageville, Missouri and a deputy sheriff of Pemiscot County, was in Portageville near Highway 162 and I–55 when he heard Smith's radio transmission to the New Madrid Sheriff's Office advising of the chase. Hearing Smith say that they were traveling about 120 m. p. h., Moore drove to a point north of the overpass and placed his car astride the northbound lanes of I–55 about 20 to 25 feet north of the point where the north entry ramp from Route 162 joins the northbound lanes of I–55. The rear portion of Moore's car was blocking the right lane of the highway, the lane in which the 1967 Ford was traveling. Moore, who remained in the car, activated the flashing red dashboard light in the windshield of his unmarked vehicle. He did not have a description of the automobile that was being chased and did not know what kind of car he was looking for. Before the vehicles involved in the chase came into view, Moore heard Smith's radio transmission advising that Smith had Burden "cornered" in the right hand lane of the highway. Smith was in the left land alongside Burden. Moore then knew that "[Burden] was going to run over them people if he was going as fast as he said he was . . . .." Smith did not know that Moore had stationed his car on the highway until he saw the red light as he came within view of the interchange. There was a curve in the road to the south of the scene of the accident but a person on the highway could see at least one and one-half miles to the south from the scene.

As soon as Whitehead, who was leading in the 1970 Chevrolet, saw Moore's car ahead of him on the highway, he slowed his car, turned on the right turn blinker and moved toward the right (east) shoulder of the road. When Whitehead had slowed to about 10–15 m. p. h. with the right front wheel on the shoulder, the Burden car struck the 1967 Ford occupied by Frank, driving it into the Whitehead car. Upon the impact of the Burden car with the 1967 Ford, the Ford exploded and burned, killing Frank and the other occupants.

Moore remained in his car at all times and did not attempt to direct the oncoming vehicles to move from the path of the chase or to direct them around his vehicle. If, on the other hand, the jury believed Moore's or Smith's version (which we shall presently discuss) as to Moore's conduct in placing his car with flashing light on or near the foot of the north ramp of 162, the fact remains that Moore admitted he made no attempt to direct the oncoming vehicles from the path of the chase.

## I.

■ For his first allegation of error defendant Moore contends that Pinkie L. Cannada, as a parent of the deceased adult child (who left no surviving wife, minor child or children) was not the proper party to bring this action. He argues that suit should have been brought by the executor or administrator of the estate of the deceased under § 537.080(3), RSMo 1969, pursuant to the holding in *Rogers v. Fiandaca*, 491 S.W.2d 560 (Mo.1973). Plaintiff, on the other hand, asserts that under § 537.080(2), she is a proper party to the suit.

Through the interpretative cases, certain ambiguities of § 537.080 have been resolved. One such ambiguity is the absence of express language in the section or its subdivisions concerning the marital status or age of decedents for whose death an action may be brought. Except for the reference to unmarried minor decedents in subdivisions (2) and (3), it is not stated whether he may be a minor or one who attained his majority, or whether he may be married or on the other hand unmarried. This legislative deficiency, and it seems to be such, has been alleviated by decisions broadly construing the statute as to the classes of decedents for whose death actions may be brought. Those classes have been held to include: (A) unmarried adults, *Wessels v. Gipfel*, 522 S.W.2d 653 (Mo.App.1975); (B) married adults, *Edmonsond v. Lakeside Hospital Ass'n*, 562 S.W.2d 361 (Mo. banc 1978);

Crane v. Riehn, 568 S.W.2d 525 (Mo. banc 1978); and (C) unmarried minors, *Kausch v. Bishop,* 568 S.W.2d 532 (Mo. banc 1978); *Mitchell v. Buchheit,* 559 S.W.2d 528 (Mo. banc 1977) (This class of decedents is expressly mentioned in the statute, subdivisions (2) and (3).) As to married minors, our research discloses no case where a member of this class of decedents has been involved, but it seems inconceivable that such class is not within the purview of § 537.080 as a part of the legislative scheme. Thus we may safely state this latter class is included with those discussed above.

Addressing now the particular question before us, we examine the statutory classes of *persons entitled to bring* such actions. Decedent here is an *unmarried adult* who left no spouse or minor children that might qualify to appropriate the action under § 537.080(1).[1] This being so, we look to the next preferred class or classes of wrongful death claimants described in § 537.080(2).[2] Subdivision (2) has been consistently construed to include within its terms *parents* (or parent) of *married adult* decedents whose spouse or minor children (if any) fail to appropriate the action within one year. *Edmonsond v. Lakeside Hospital Ass'n; Crane v. Riehn; Kansas City Stockyards v. Clark,* 536 S.W.2d 142 (Mo. banc 1976). It has also been held that the *parents* of an

unmarried adult decedent are included within the class of those entitled to proceed under subdivision (2). *Wessels v. Gipfel. Wessels* involved the suit of a widowed mother for the death of her unmarried adult son. The suit was settled during the second year following the son's death. Four months later decedent's illegitimate daughter brought suit which the court held was barred by the one-year limitation period provided in subdivision (2) of the statute. In reaching that decision, the court considered and ruled that the presence of the dead man's mother triggered the one-year limitation period of subdivision (2) and that as the surviving *parent* of the unmarried adult decedent she was a member of the class of claimants provided in the subdivision.[3]

We turn now to appellant's contention as to *Rogers v. Fiandaca,* 491 S.W.2d 560 (Mo. 1968). The first three lines of subdivision (2) are as follows: "If there be no spouse or minor children or if the spouse or minor children fail to sue within one year after such death, or if the deceased be a minor and unmarried, then by the father and mother, . . ." This portion of the subdivision has been construed by the cases cited above to read as follows: "[If the deceased be a (1) married adult (*Edmon-*

---

1. Section 537.080(1) reads: "By the spouse or minor children, natural or adopted, of the deceased, either jointly or severally; provided, that in any such action the petitioner shall satisfy the court that he has diligently attempted to notify all parties having a cause of action under this subdivision; and provided, further, that only one action may be brought under this subdivision against any one defendant."

2. Section 537.080(2) reads: "If there be no spouse or minor children or if the spouse or minor children fail to sue within one year after such death, or if the deceased be a minor and unmarried, then by the father and mother, natural or adoptive, who may join in the suit, and each shall have an equal interest in the judgment; or if either of them be dead, then by the survivor; or if the surviving parents are unable or decline or refuse to join in the suit, then either parent may bring and maintain the action in his or her name alone, for the use and benefit of both such parents."

3. There were two unusual factual features of *Wessels* worth noting here: (1) Decedent's mother commenced suit less than one month following her son's death. Decedent's illegitimate child who sought to bring the later suit was born six months after the commencement of the mother's suit and the mother's suit was settled and dismissed during the second year following the death. (2) The decedent's illegitimate daughter's suit was commenced four months following the dismissal of the mother's suit and during the second year following decedent's death. This was also during the second year of the child's life. Notwithstanding these unique circumstances, the court held that the parent of the unmarried adult decedent had a right of action "at the termination of the 'one year' referred to in subsection 2 . . . ." 522 S.W.2d at 656. Though the mother, apparently believing her unmarried adult son had no children, appropriated the action during the first year following his death, the court held that it was her privilege to follow it to judgment (or settle it) after the "one year had passed." *Id.*

*sond* ), or (2) an unmarried adult ( *Wessels* ), or (3) an unmarried minor with minor children ( *Kausch* ) and] [i]f there be no spouse or minor children or if the spouse or minor children fail to sue within one year . . [intervening phrase at this point in the sentence will be discussed infra] then by the father and mother, . . ."

The "intervening" phrase referred to above is "or if the deceased be a minor and unmarried." This phrase must be read in connection with the words "then by the father and mother" which immediately follow it. Thus the entire phrase becomes "or if the deceased be a minor and unmarried, then by the father and mother . . ." and it creates a separate class of decedents for whose death the parents may sue.[4]

In contrast to this tide of judicial construction providing parents of a deceased child the clear right to proceed under subdivision (2), this Court in *Fiandaca*, a 1973 divisional opinion, allowed a claim to be brought by the administrator of the estate of an *unmarried adult decedent* who died without surviving children, but was survived by her mother. The case came to the court on appeal from a denial of defendant's counterclaim, and that procedural posture seems to have influenced the result. The facts were these: The deceased, Wilma Sue Burns, was an unmarried adult without surviving children who lost her life in an automobile accident in which Willis Rogers was also killed. Both were occupants of the same vehicle. The administrator of the estate of Rogers sued the estate of Wilma Burns through its administrator, charging that Wilma Burns had been the driver and through her negligence Rogers was killed. On the other hand, the administrator of Wilma Burns' estate filed a counterclaim charging that Rogers was the negligent driver and describing Wilma's mother as beneficiary. The case turned on whether Willis Rogers or Wilma Burns was driving the automobile. Rogers' action was settled, but the administrator of the Wilma Burns estate continued with the counterclaim for Wilma's death. In the trial on that counterclaim, the court directed a verdict against the administrator of Wilma's estate, holding that he was not a proper party to bring the action—the action could only be brought by Wilma's mother as her survivor. This Court held that as to the estate of an *unmarried adult* not survived by minor children, even though survived by a parent, the administrator was a proper party to bring the action for wrongful death of the decedent. The court did not have a factual situation before it in which a parent sought to bring the action in his or her name. Nevertheless, the court stated, "The plaintiff argues that the Legislature must have intended that the surviving parent file the action for an unmarried adult as in the case at bar. In this, we disagree, . . . ." 491 S.W.2d at 564. We have examined the rationale of the opinion in *Fiandaca* and conclude the first portion of subdivision (2) hereinabove discussed was simply ignored.

The opinion of the Missouri Court of Appeals in *Wessels v. Gipfel*, 522 S.W.2d 653 (Mo.App.1975), is in apparent conflict with the ruling of *Fiandaca*. There the court held that the *mother* was a proper party to bring the action for wrongful death of her *unmarried adult son*, provided there were no minor children or the action was not otherwise appropriated by a minor child during the first year following the death. We find nothing in the decisions of this Court since 1975 indicating that the finding there has been disapproved or overruled; indeed, a number of the cases hereinabove discussed have cited *Gipfel* as authority in other connections. They include *Kansas City Stockyards*, 536 S.W.2d at 144 (1976); *Crane*, 568 S.W.2d at 527 (1978); *Kausch*, 568 S.W.2d at 535 (1978); and *Cobb v. State Security Ins. Co.*, Mo., 576 S.W.2d 726 at 735 (Mo. banc 1979). We hold that the mother of the decedent was the proper party to

---

4. It should be noted that this last cited portion of subdivision (2) has been judicially expanded to read: "or if the deceased be a minor and unmarried *without child or children*, then by the father and mother . . . ." The emphasized words were added to the statute by the court in *Kausch*, 568 S.W.2d at 536.

bring this action.[5] To the extent that *Fiandaca* is contrary to this holding it should no longer be followed.

## II.

Appellant Moore next contends that the court erred in giving plaintiff's verdict directing instruction as it was not supported by the evidence. That Instruction reads:

Your verdict must be for plaintiff and against defendant Moore if you believe:

First, plaintiff was the mother of Frankie Lee Cannada, decedent, and

Second, defendant Moore, by his conduct, caused the automobile occupied by decedent, Frankie Lee Cannada, to slow in a lane reserved for moving traffic, and thereafter knew or by the use of the highest degree of care could have known that there was a reasonable likelihood of a collision involving the automobile occupied by decedent, in time thereafter to have given direction to the operator of the vehicle occupied by decedent, Frankie Lee Cannada, in time thereafter for the operator of said vehicle to have moved the same to a position of safety, but defendant Moore failed to do so, and

Third, defendant Moore was thereby negligent, and

Fourth, such negligence directly caused or indirectly contributed to cause the death of Frankie Lee Cannada, and

Fifth, plaintiff sustained pecuniary loss.

█ Plaintiff chose to submit a theory requiring proof that Moore could have given direction to the operator of the 1967 Ford in time for him to have moved to a position of safety. We must determine if the instruction was supported by substantial evidence warranting such a finding by the jury. In making that determination we view the evidence in the light most favorable to plaintiff's theory. *Certa v. Associated Bldg. Center, Inc.*, 560 S.W.2d 593 (Mo. App.1977).

█ The jury could have found (1) (as Whitehead testified) that Moore stopped his vehicle near the center line with his red light flashing, blocking the northbound lanes of highway I–55, or (2) (as Moore testified) that he stopped his vehicle at the bottom of the ramp partly on the shoulder of the east side of main travel lanes facing south with his red light flashing and thereafter turned sharply to the left, pulling up onto the ramp when he saw the cars emerge from under the overpass, or (3) (as Smith testified) that Moore's vehicle was positioned on the concrete portion of the ramp. Defendant Moore admitted that from the position he described, he could see toward the south 55–60 feet in the easterly northbound lane and about one mile in the westerly northbound lane. Other testimony was to the effect that from Moore's position at the time, oncoming traffic was visible from the south for 1½ miles. From a radio transmission sent by Smith, Moore knew that Smith and Burden were approaching him at very high speeds and that Smith, who was in the left lane, had Burden "cornered" or boxed in the right lane. It may reasonably be inferred that the two cars coming from Cleveland, Miss., were within Moore's view because he was cognizant of the impending danger. Moore testified that upon hearing the radio transmission he knew that Burden was going to "run over

---

5. The Court of Appeals posited the following proposition in this case:

We do not believe it unreasonable or absurd to hold that, in a case such as this, the action may be brought by the surviving parents or by the administrator or executor for the benefit of the parents. Where the parents have suffered damages by reason of the death of an adult child the additional burden of opening an estate for the sole purpose of having the administrator bring the action as a trustee for the benefit of the parents places form above substance. There are instances

where the administrator as the proper party would be the more convenient person to bring the action, as when an estate had been opened for other reasons. We have in mind the situation that was present in *Fiandaca* when the estate was opened so that the original plaintiff (Rogers) could bring an action for the wrongful act of decedent. The estate of decedent, Wilma Sue Burns, was in a position to file a counterclaim so that all issues could be disposed of in one action.

*Compare State ex rel. Zigler v. Adolf*, 561 S.W.2d 691 (Mo.App.1978).

them people" and yet he remained in his car. He failed to position himself to warn approaching traffic of the impending danger, which by his admission he knew existed. We believe that the jury could reasonably find that Moore was negligent under the circumstances in not taking proper action to direct traffic or warn users of the road in time to move to a position of safety. There was sufficient evidence of this most unusual fact situation to warrant the submission under plaintiff's main verdict directing instruction.

### III.

■ Moore further challenges the instruction because of the use of the word "conduct" in paragraph second. Appellant apparently contends that the word "conduct" lacks reference to any particular action of Moore; that the instruction was vague and gave the jury a "roving commission." The challenged instruction is not in MAI. As to such instructions, Rule 70.02(e) provides that they shall be "simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts." The requirements of this rule "are not intended to supplant the basic function of a verdict-directing instruction, which is to submit to the jury the factual questions which they must resolve." *Parker v. Stern Brothers & Co.*, 499 S.W.2d 397, 406 (Mo.1973).

The plaintiff in submitting her case recognized that an essential element of her submission was the "conduct" on the part of Moore which "caused the automobile occupied by [Frank] to slow in a lane reserved for moving traffic . . .." Though the evidence concerning the positioning of Moore's car prior to the accident is in conflict, Moore in deposition and on trial, testified that he drove down the ramp on to the right (east) shoulder of the road, made a sharp left turn and positioned his automobile on the ramp near the shoulder of the road with most of his car on the concrete but his right front wheel was on the blacktop. (The blacktop he referred to is apparently near the point of intersection of the

west line of the northbound ramp and the east line of the northbound lanes of I–55.) He testified that he was facing south and that the red light on the dash at the windshield was operating. Defendant Smith's version placed Moore's car some distance north of the overpass at the bottom of the concrete portion of the north ramp apparently some distance north of and slightly east of the position described by Moore. Smith stated he could see Moore's car from a distance of at least one-half mile to the south and that he had seen the red light flashing from a distance of two miles. Plaintiff's witness, Whitehead, testified that Moore's car was 20 to 25 feet north of the point where the west side of the north ramp joined the east side of the highway, and was athwart the northbound lanes of the highway. The action of Moore in positioning his car (in any of the three locations described) made its flashing red light visible for a great distance to the south and this "conduct" gave rise to the duty to warn which was described in the instruction as "to have given direction to the operator of the vehicle occupied by decedent, Frankie Lee Cannada, in time thereafter for the operator of said vehicle to have moved the same to a position of safety, but defendant Moore failed to do so, . . ."

The only action of defendant Moore to which the instructional phrase "by his conduct" could refer is the positioning of his car with flashing red light in one of the three locations described above, any of which would give rise to the duty to warn. We believe the jury could not have been misled, nor can it be said that some other non-related conduct of the defendant was in any way involved or referenced by the instructions. Appellant's contention in this regard is denied.

### IV.

■ Defendant next contends the verdict-directing instruction improperly submitted separate theories of recovery in the conjunctive contrary to MAI 1.02. We do not agree. Plaintiff's single theory of negligence required a finding of several facts

in combination, *i. e.*, that Moore's action created a hazard of which he was aware and that he failed to take action that would have prevented the impending collision. The jury was required to find each element of the submission before it could find for plaintiff on the issue of liability. Such submissions are contemplated by MAI. *Rooney v. Lloyd Metal Products Company*, 458 S.W.2d 561, 571 (Mo.1970). See MAI 1.02, Committee's Comment at 7 (2d ed. 1969). This contention too is denied.

We have considered other criticisms of this instruction but find them without merit.

## V.

■ Defendant also takes issue with the admission of certain evidence concerning decedent's future earning capacity. At the time of his death Frank Cannada, a decorated veteran of combat duty in Vietnam, was 21 years of age. He had been discharged from the Marine Corps with the rank of Corporal on June 23, 1972, nine days before he died in the collision and had been earning $387.50 per month. During his service with the Marines he made an allotment to his mother; however, there was no evidence that he had applied to reenlist. Against this background plaintiff's witness, Lt. Gary Anderson, Marine Recruiting Officer, testified without objection that decedent was eligible to reenlist and though the witness was unable to state the then earnings of a Marine Corporal, he was asked what a Sergeant would earn at that time. This objection was interposed by defense counsel, "Judge, we are getting a little speculative and I will object for that reason." The objection was overruled and the witness testified that "[a] Sergeant with six years in Service, or with four years in Service, according to this pay scale, $457.50." No other objection appears to this line of inquiry and on cross-examination defense counsel interrogated as to decedent's having taken any steps to reenlist in the Marine Corps. Defendant contends the admission of the testimony concerning the $457.50 (per month) was speculative and its admis-

sion constituted prejudicial error. We do not agree for several reasons. First, defendant made no objection as to the testimony concerning decedent's eligibility to reenlist and on cross-examination inquired what steps, if any, he had taken to do so. Second, the testimony, if speculative and thus erroneously admitted as to a Sergeant's pay rate, is such that we are unable to say it was an error materially affecting the merits and thus it is not grounds for reversal, Rule 84.13(b), especially in view of the modest award of damages.

■ Finally, appellant contests the jury's assessment of damages at $20,000 as against the weight of the evidence. Appellant forgets that "[t]he jury has an extraordinarily wide discretion in determining the amount of recovery . . . in wrongful death cases." *Aubuchon v. LaPlant*, 435 S.W.2d 648, 650 (Mo.1968). Appellate courts will not interfere with that discretion absent clear abuse. *Domijan v. Harp*, 340 S.W.2d 728 (Mo.1960).

■ The evidence at trial showed that Frank, the youngest of plaintiff's children, had worked eight hours every day after school and gave his earnings to his mother. In the Marine Corps, he sent her an allotment of $60.00 per month. His death occurred within one month of his return to civilian life. Adding the 3.2 years of lost support between his death and the trial and plaintiff's life expectancy of 14.4 years at the time of trial, plaintiff lost about 17.6 years of support from her son. When the $1900 incurred for Frank's funeral is taken out, plaintiff was awarded $18,100 for the lost 17.6 years of support—slightly more than $1,000 per year. We do not find the jury's award excessive.

The judgment is affirmed.

MORGAN, C. J., and DONNELLY, SEILER, SIMEONE and WELLIVER, JJ., concur.

BARDGETT, J., concurs in separate concurring opinion filed.

BARDGETT, Judge, concurring.

I concur in the principal opinion but believe I should state that, in my opinion, under the present wrongful death act this suit could, arguably, be maintained by a personal representative for the use and benefit of the party entitled to receive the damages or, as was done in this case, by the mother of the adult unmarried deceased.