WILLIAM I. RICHARDSON, Appellant, v. CITY OF HANNIBAL, a Municipal Corporation.—50 S. W. (2d) 648.

Court en Banc, May 24, 1932.

*Mahan, Mahan & Fuller* for appellant.

*Fred B. Hulse, Rendlen, White & Rendlen* and *D. M. Stout* for respondent.

WESTHUES, C.—In this action plaintiff asks to recover ten thousand nine hundred fifty dollars ($10,950), for adamages alleged to have been sustained, by plaintiff, as the result of a collision of a fire department motor, hook and ladder truck, belonging to the city of Hannibal, Missouri, with plaintiff's car, while plaintiff's car was parked on the south side of Broadway in the city of Hannibal. In the trial and at the close of plaintiff's case the court directed a verdict for the defendant city. Plaintiff, being unsuccessful in his motion for a new trial, appealed to this court.

Plaintiff in his petition charges in part as follows:

"Plaintiff says that on February 11, 1927, the City of Hannibal, Missouri, was long prior thereto, and ever since has been a municipal corporation duly incorporated and existing under the laws of the State of Missouri.

"That it had and maintained a fire department, operated by the servants and agents of the City of Hannibal, who employed, paid and discharged said servants and agents when it deemed necessary. (The

expenses of maintaining the same were derived from taxation of the people of Hannibal.)

"That the Fire Department, so operated and maintained, consisted of modern apparatus for fighting and quenching fires in the city. That among other apparatus, it had maintained and operated a large and powerful motor hook and ladder truck, which was of long and heavy proportions and capable of great speed, and an instrument of death and destruction unless carefully driven and managed.

"That for a long time prior to the said 11th day of February, 1927, it had been the custom and habit of those driving said machine on the way to fires to drive the same at an unnecessarily high, dangerous and grossly negligent rate of speed on the streets of Hannibal, many times at a rate of more than fifty miles per hour; that such custom and habit of driving said machine at such unnecessarily dangerous and negligent rate of speed through such streets was extremely dangerous to the life and property of the people traveling on such streets and was such an open and notorious menace to such travelers and the public generally as to constitute a dangerous nuisance; and the plaintiff avers that the driving and operation of such motor hook and ladder truck, as aforesaid, was known, or by the exercise of reasonable and ordinary care, could have been known to said City of Hannibal, its officers, agents and servants. That such driving and nuisance was and is contrary to the laws of reason and to the rights of the people lawfully using such streets as pedestrians or in vehicles, and dangerous to their lives and property. That notwithstanding such condition, the said City of Hannibal, its officers and agents, long prior to the injury hereinafter mentioned, negligently failed to prevent such reckless and unnecessarily dangerous driving of said dangerous machine over the streets of said city.

"That at the time the injury herein occurred, said motor hook and ladder truck of said department was driven by William Lacey, the agent and servant of the City of Hannibal, in a grossly negligent, wanton and reckless manner, at a high, dangerous and grossly negligent rate of speed, to-wit, at a speed of more than fifty miles per hour, west on Broadway Street and into and across the intersection of said Broadway Street with Market Street."

Plaintiff further alleges that while he was driving his automobile, with due care and caution and at a low rate of speed in an eastwardly direction on Broadway, he noticed the fire department truck approaching from the east; that plaintiff immediately, in compliance with the provisions of the city ordinance, drove his car to the right-hand side of the street and as close as possible to the curb, which was within three feet thereof. Plaintiff then alleges that the motor, hook and ladder truck crossed from the north side to the south side of Broadway

street at a high, dangerous and grossly negligent rate of speed of more than fifty miles an hour and struck plaintiff's car; that the street at this point is more than sixty feet wide. Plaintiff's petition then contains a detailed description of the personal injuries received by plaintiff and also alleges that his, plaintiff's, car was completely demolished.

The evidence adduced tends to prove that plaintiff was driving his car east on Broadway extension and that the fire truck was going west on Broadway. The junction of Broadway Street, Broadway extension and Market Street form the letter "Y." Broadway extension is a continuation westwardly of Broadway, and Market Street branches off of Broadway in a southwestwardly direction. The plaintiff had reached the point on Broadway beyond the center line of Market Street, if extended eastwardly on Broadway, when he noticed the fire truck approaching, and drove his car to the south curb on Broadway. The driver of the fire truck, desiring to go west on Market Street, made what we call in the vernacular a 'short cut,' and cut across the center line of Broadway some distance east of the intersection of the three named streets. The fire truck was on its way to Market Street and to a fire. The first truck collided with plaintiff's car, which had just come to a stop near the curb on the south and plaintiff's right side of Broadway. The fire truck, at the time of the collision, was being driven on the south side of the street going west in the direction of Market Street. Plaintiff and other witnesses testified that the truck was traveling about thirty-five miles an hour immediately prior to the collision.

Only two points are preserved, in the motion for a new trial, for our review and they are: first, that the trial court erred in sustaining defendant's demurrer to the evidence and directing a verdict for defendant city of Hannibal; second, that the court erred in not granting plaintiff a new trial on the ground of newly discovered evidence.

There was no evidence offered or introduced by plaintiff tending to sustain the allegations of plaintiff's petition, as contained in the fourth paragraph above quoted, namely, that it had been the custom and habit of the members of the fire department, on the way to fires, to drive the fire truck at a high, dangerous and negligent rate of speed so as to constitute a public nuisance and an unnecessary danger to the life and property of the traveling public. The question for our consideration is, whether the city of Hannibal is liable for damages plaintiff has sustained by reason of the negligence of the driver of the fire truck in causing the truck to collide with plaintiff's car? ■ The courts of the various states of the union are almost unanimous in holding that a municipality is not liable for the negligence of the members of its fire department. Only a few isolated cases are to be found that do not subscribe to this rule. Our own State has

furnished a case that is frequently cited in the textbooks and by the courts of our sister states. The case referred to is McKenna v. City of St. Louis, 6 Mo. App. 320. In that case a child, standing on the sidewalk, was negligently run over and killed by a fire department vehicle. The St. Louis Court of Appeals, in harmony with the general rule, held that in the operation of the fire department, by the city, the city was exercising a governmental power or function and, therefore, the city was not liable for damages resulting from the negligence of the firemen. The court, speaking through LEWIS, P. J., said:

"It has repeatedly been held that the establishment of a fire-department under authority given by the Legislature, and the practical application of its special purposes when established, belong to this class of powers. The cases are numerous, and the facts in some of them are so precisely like those stated in this petition that there cannot be a shadow of distinction in the principles which should control. [Hafford v. New Bedford, 16 Gray, 297; Fisher v. Boston, 104 Mass. 87; Howard v. San Francisco, 51 Cal. 52; Brinkmeyer v. Evansville, 29 Ind. 187; Wheeler v. Cincinnati, 19 Ohio St. 19; Grant v. Erie, 69 Pa. St. 420.]

"It is argued for the plaintiffs that the privilege of maintaining a fire-department is of such local and special benefit to the corporation and its members that it cannot be properly classed among those governmental and public powers which exclude a civil liability for negligence in their exercise. But the authorities are the other way. All the cases just cited arose upon alleged negligences or malfeasances of the employees in city fire-departments which were organized under legislative authority substantially similar to that which originated the fire-department of St. Louis.''

In 43 Corpus Juris, page 967, section 1746, we read:

"The power to organize and maintain a fire department for the prevention of damage by fire is a public or governmental function, and a municipality will not ordinarily be liable unless the statute so provides, for the wrongful or negligent acts or omissions of the department or its employees in the performance of their duties, . . . or, generally where persons on the public streets are injured by the negligence of firemen driving vehicles employed in the fire department.''

To the same effect 9 American Law Reports, page 143:

"The overwhelming weight of authority is to the effect that a fire department, maintained by a municipal corporation, belongs to the public or governmental branch of the municipality so as to relieve it, at least in the absence of statutory provision to the contrary, from liability for injuries to person or property resulting from malfeasance or nonfeasance connected with the maintenance and operation thereof.''

We find cases cited from thirty-three states in support of the text quoted, supra. A leading case in support of the minority rule, which is Fowler v. City of Cleveland, 100 Ohio St. 158, 9 A. L. R. 131, was expressly overruled by the same court in Aldrich v. City of Youngstown, 106 Ohio St. 342, 27 A. L. R. 1497, 140 N. E. 164. The courts of Florida seem to stand alone in consistently holding that a municipality is liable for the negligence of its firemen. The basis upon which cities are held responsible in that state is that the wreckless driving of fire trucks constitutes a nuisance and renders the streets unsafe to the traveling public. In Maxwell v. Miami, 100 So. (Fla.) 147, 33 A. L. R. 1. c. 687, we read:

"Reckless driving of fire trucks on the streets of a city is manifestly not essential to efficiency in fire fighting, and such conduct needlessly and unreasonably, and consequently unlawfully, impairs the private rights of those who are lawfully upon the streets with their property. Such conduct renders the streets unsafe and, when permitted by the city, liability of the city may arise therefrom if persons and property lawfully on the street are injured in consequence thereof.

"The city of Miami has 'power to . . . prevent or abate nuisances' and 'to regulate the speed at which' automobiles and all vehicles 'may be driven through the streets.' [Acts 1915, sec. 25, chap. 7196.] This power carries with it a duty to prevent or abate nuisances and to regulate the speed at which all vehicles are driven through the streets, in the interest of public safety. [See Tallahassee v. Kaufman, — Fla. —, 100 So. 150, this day filed. See also L. R. A. 1917B, p. 548.]"

Plaintiff evidently based his cause of action on the Maxwell case, supra. The fourth paragraph of plaintiff's petition, above quoted, is almost a *verbatim* copy of the allegations of the petition in the Maxwell case. With reference to these allegations the Florida case had the following to say:

"These allegations state a course of conduct that the city should have remedied to avoid a nuisance that endangered the lives and property of persons lawfully using the streets, and liability of the city may result therefrom, *if duly established.*" (Italics ours.)

In the present case, as above stated, plaintiff wholly failed to sustain, by any evidence, that part of his petition. The Florida cases are, therefore, not authority for plaintiff's position.

Plaintiff insists that conditions have so changed, since the advent of motor-power trucks and motor-driven vehicles, that the courts should establish a different rule of law and hold cities liable for the negligence of firemen, when operating what plaintiff denotes "dangerous instrumentalities," having reference to the motor-driven fire department trucks. However, to change this rule of law would be,

in effect, overruling the doctrine that the State and the several subdivisions thereof are not responsible for damages resulting from the negligence of the officers of the State while in performance of duties which are purely governmental. The fact that the doctrine of *"respondeat superior"* does not apply to the State or the several political subdivisions thereof, when exercising a governmental function, is so well established in our system of government that we do not find any cases where the courts have held to the contrary. The only cases where this doctrine does not apply are cases where the statute of the State, through its Legislature, has made the change. ■ If conditions so change that public justice demands that the municipalities shall be responsible for the negligence of the members of the fire departments, the Legislature has the power to prescribe the remedy and will probably do so. Recent cases, holding cities not liable for the negligence of the members of fire departments, are: Hawkins v. City of Springfield, 194 Mo. App. 151, 186 S. W. 576; Vezina v. City of Hartford (Conn.), 138 Atl. 145; Powell v. Village of Fenton (Mich.), 214 N. W. 968; Adkinson v. City of Port Arthur, 293 S. W. (Tex.) 191; Barcus v. City of Coffeyville, 282 Pac. (Kan.) 698; Hall v. City of Jackson (1929), 30 Fed. (2d) 935; Abihider v. City of Springfield, 177 N. E. (Mass.) 818. The above cases fully answer every contention made by plaintiff in this case. The trial court properly sustained the demurrer and directed a verdict for defendant.

■ There is no merit to plaintiff's contention that the trial court erred in not granting plaintiff a new trial on the ground of newly discovered evidence. The record does not contain any suggestion that plaintiff asked the trial court for a continuance, on account of absent witnesses, or that he might have further time to obtain the evidence desired to sustain the allegations of his petition. Plaintiff was satisfied to go to trial and rest his case without a scintilla of evidence to sustain the allegations of the fourth paragraph of his petition, above quoted. The alleged newly discovered evidence relates wholly to that issue raised by plaintiff. It certainly would be a novel situation if a litigant were permitted to gamble with the court and jury upon a verdict or judgment, and then, in case the finding was against him, ask and be granted a new trial because he did not introduce any evidence to sustain certain allegations of his petition. Plaintiff must have had some foundation upon which to base the allegations of the fourth paragraph of his petition and we must presume that plaintiff considered them material to his case. In his motion for a new trial plaintiff says that he did not know that such evidence existed until after the trial. May we ask, why were the allegations in the petition, if no evidence was discovered prior to the trial? The newly discovered evidence is summed up in the motion for a new trial as follows:

". . . and that the witnesses so named would state in their

testimony, if given an opportunity to testify in this case, that the usual, customary and ordinary speed of said hook and ladder truck, as they had observed it, in answering calls to fires and while driven upon various streets in the City of Hannibal, during all of the times which they observed it, so run, at a speed varying from thirty to forty-six miles an hour.''

That evidence alone would not necessarily sustain plaintiff's contention that the fire department was in the habit of driving its trucks at a reckless, negligent and dangerous rate of speed, so as to constitute a nuisance and an unnecessary danger to life and property. Plaintiff well recognized this, for we read in his brief as follows:

''The speed of the motor truck is not so much involved as the negligent driving of the same. A large motor truck, like the one used by the defendant, is almost as dangerous running at twenty miles an hour as it is running at fifty miles. In either case when it hits it injures and destroys.

We cannot improve upon that statement. It is not the speed so much as the total disregard of the rights of others, by the drivers of motor vehicles, that renders the operation of them dangerous to life and property. The Missouri Legislature has expressly exempted fire department apparatus from the provisions of the speed laws. [Sec. 7767, Revised Statutes 1929.] This for a very good reason, as was said in the dissenting opinion in the case of Fowler v. City of Cleveland, supra, 9 A. L. R. 1. c. 142:

''The municipalities of the State are merely agents of the sovereign when they exercise governmental functions, and where employees of a fire department, while on their way to a conflagration menacing the city, *where the lives of citizens may be imperiled by the loss of a few seconds' time,* do commit an act of negligence, whether of omission or commission, such act should not cast upon the municipality, in its attempt to allay the conflagration or rescue the citizens, a civil liability, unless it is expressly imposed upon the municipality by statute.'' (Italics ours.)

The granting of a new trial, for alleged newly discovered evidence, rests largely within the discretion of the trial court. It may be denied upon the ground of a lack of diligence in not discovering the evidence prior to the trial. [Mahany v. Kansas City Rys. Co., 286 Mo. 601, 228 S. W. 1. c. 825 (7).] It may also be denied on the ground that even though the evidence were at hand it would probably not alter the result. We hold that there was no abuse of discretion, by the trial court, in denying plaintiff a new trial.

The judgment of the trial court is affirmed.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court en banc. All concur, except *White* and *Henwood, JJ.,* who concur only in the result.