**Phyllis OBERKRAMER, Jeffrey Oberkramer, John Oberkramer and Scott Oberkramer, Appellants,**

v.

**The CITY OF ELLISVILLE, the City of Ballwin, and the City of Manchester, Respondents.**

No. 43457.

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 25, 1983.

Motion for Rehearing/Transfer to
Supreme Court Denied
March 17, 1983.

Allan & Kistner by John B. Kistner, Jr., St. Louis, for appellants.

Evans & Dixon by James W. Childress, St. Louis, for respondent City of Ballwin.

Moser, Marsalek, Carpenter, Cleary, Jaeckel & Keaney by Parks G. Carpenter and M. Jane Christen, St. Louis, for respondent City of Ellisville.

Carl I. Katzen and Terry W. Liberman, St. Louis and William R. Kirby, St. Louis, for respondent The City of Manchester.

SATZ, Judge.

Plaintiffs, the widow and minor children of a Des Peres police officer, brought this action for wrongful death against seven named defendants including three municipalities, the Cities of Ellisville, Ballwin and Manchester. Plaintiffs filed separate causes of action against each defendant in two counts. One count was filed by the widow and the second count filed "by"[1] the minor children. The trial court dismissed with prejudice the causes of action against the municipal defendants. The counts filed by the widow were dismissed for failure to state a claim upon which relief may be granted and the counts filed by the children were dismissed as an improper splitting of a single cause of action. The trial court certified its ruling as a final and appealable order. Plaintiffs appeal. We affirm the dismissal of the counts brought by the children and reverse and remand the dismissal of the counts brought by the widow.

According to plaintiffs' allegations, at approximately 3:40 a.m. on December 24, 1978, Officer John Franey of the Ellisville Police Department approached a white Chevrolet stopped at an electric traffic signal at the intersection of Clarkson and Manchester Roads in St. Louis County. Officer Franey was on duty at the time and was driving a police department vehicle. The white Chevrolet was occupied by three juveniles, aged 13–15. As he approached to investigate, Officer Franey activated the police vehicle's flashing red lights. The Chevrolet violated the electric traffic signal and proceeded at high speed eastward on Manchester Road. Officer Franey commenced pursuit of the white Chevrolet and the vehicles quickly obtained speeds in excess of 100 m.p.h. As the chase continued eastward on Manchester Road, officers from the cities of Manchester and Ballwin entered the pursuit driving police department vehicles. Upon hearing that the pursuit was approaching his jurisdiction, Officer John Oberkramer placed his police vehicle astride the eastbound lanes of Manchester Road, just east of Des Peres Road and then stood in the westbound lanes some 100 feet east of the roadblock. As the white Chevrolet approached the roadblock at high speed it veered out of control, crossed the median and struck Officer Oberkramer. Officer Oberkramer died as a result of the injuries suffered in this accident.

Plaintiffs plead identical allegations of negligence against each municipal defendant.[2] The municipalities were charged under the doctrine of respondeat superior with the alleged negligence of their police officers and were also charged with "primary" negligence. Under respondeat superior, plaintiffs alleged the police officers were negligent in instituting and continuing the high speed pursuit because (1) the extreme speeds obtained during the length and course of the high speed pursuit created a hazard, (2) during the pursuit, each officer failed "to attempt to receive" instructions about the advisability of the pursuit and (3) each officer should have known, when he began the high speed pursuit and during the high speed pursuit, that the pursuit created an unreasonable risk of harm to the public. The allegations of "primary" negligence were grounded on the municipalities' failure to have a policy governing the proper conduct of high speed pursuits and also in their failure to properly supervise the

---

1. The record before us does not disclose a next friend or guardian filing the count on behalf of the minor children. The propriety of the minor children suing in their individual capacity is not before us.

2. Plaintiffs' causes of action against the remaining defendants, the parents and guardians of the juveniles and the owner of the white Chevrolet, are not now before us.

policemen during the course of this particular pursuit.[3]

■ In reviewing the dismissal of plaintiffs' petition, we treat all facts alleged as true and construe the allegations broadly in plaintiffs' favor. *E.g., Porter v. Crawford & Co.,* 611 S.W.2d 265, 266 (Mo. App.1980). A pleading is sufficient to overcome a motion to dismiss if it invokes principles of substantive law that entitle plaintiff to relief. *E.g., Shapiro v. Columbia Union National Bank and Trust Co.,* 576 S.W.2d 310, 312 (Mo. banc 1978).

Plaintiffs contend their allegations are sufficient to state a claim on which relief may be granted. Defendants argue the petition fails to state a cause of action because they are immune from liability under the doctrines of sovereign and official immunity. Furthermore, they contend plaintiffs' allegations failed to plead any actionable negligence regardless of immunity. Plaintiffs counter that official immunity is inapplicable in this case since it is the municipalities and not the individual police officers that are being sued. Furthermore, plaintiffs argue their allegations of negligence fall within § 537.600 RSMo 1978,[4] which expressly waives sovereign immunity in this case. We first address the issue of whether plaintiffs have plead actionable negligence.

## ALLEGATIONS OF NEGLIGENCE UNDER THE DOCTRINE OF RESPONDEAT SUPERIOR

Plaintiffs plead three separate allegations of negligence on a theory of respondeat superior.[5] First we consider plaintiffs' first and third allegations of negligence under this doctrine. In the first, plaintiffs allege the extreme speeds of the police vehicles created a hazardous driving condition. In the third, plaintiffs allege the police officers knew or should have known the danger created by the extreme speeds "outweighed any possible danger created by the escape" of the operators of the pursued vehicle. The third allegation simply pleads in more explicit terms the negligence implicit in the first allegation. Stripped to its essentials, plaintiffs plead the police officers were negligent in speeding at 100 m.p.h. after a traffic violator. We find these allegations do not plead a cause of action.

Obviously, to state a cause of action against defendants, plaintiffs must define a duty owed by each officer to plaintiffs' decedent, a breach of that duty and damage to plaintiffs proximately caused by each officer's conduct. *See, e.g., Scheibel v. Hillis,* 531 S.W.2d 285, 288 (Mo. banc 1976). In this case, each officer's duty is defined in § 304.022. Section 304.022.4(1) provides that the driver of a police vehicle "shall not sound the siren ... or have the front red lights or blue lights on except ... when in

---

3. For clarity, we refer to these allegations as "primary" negligence. Obviously, the defendant municipalities act and function only through their employees and agents. However, in these allegations plaintiffs do not explicitly designate the particular individuals who allegedly were at fault.

4. Unless otherwise indicated, all statutory references are to RSMo 1978.

5. The allegations against the City of Ellisville in Count V are representative and allege the following:

"Officer Franey was negligent in his operation of the Ellisville Police Department vehicle in instituting and continuing the high speed pursuit of the white Chevrolet vehicle for the following reasons:
(a) The extreme speeds obtained by the white Chevrolet vehicle and the Ellisville police vehicle created a hazardous driving condition during the length and course of the high speed pursuit;
(b) Officer Franey failed to attempt to receive instructions from his superiors at the Ellisville Police Department as to whether it was appropriate to continue the high speed pursuit in which he was engaged in light of the circumstances of the initial law violation and the resulting pursuit;
(c) Officer Franey knew or should have known at the time that he instituted the high speed pursuit and during the course of the high speed pursuit that such high speed pursuit created a significant and substantial danger of injury to members of the public which far outweighed any possible danger created by the escape of the persons operating the white Chevrolet vehicle."

pursuit of an actual or suspected law violator . . . ." Section 304.022.4(2)(c) permits the driver of a police vehicle to "[e]xceed the prima facie speed limit so long as he does not endanger life or property." Section 304.022.4(3) permits violation of the speed limit only when the driver sounds an audible warning and the vehicle is equipped with a visible warning light. There may be several ways to construe these sections together. We believe that subparagraph (1) sets out the circumstances under which a police officer is allowed to give an extraordinary warning to other drivers. Sensibly, this warning is only necessary when the police officer intends to violate the normal traffic laws. In effect, the legislature has enumerated the circumstances under which a police officer is permitted to break the traffic laws. Subparagraph (3) describes the nature of the warning that must be given. Construing the three subparagraphs together, the legislature has provided that a driver of a police vehicle may exceed the prima facie speed limit in pursuit of an actual or suspected law violator so long as he does not endanger life or property and gives an adequate warning. We have, then, a duty of care under the circumstances. *See, e.g., Ficken v. Hopkins,* 389 S.W.2d 193, 199 (Mo.1965) (the driver of an emergency vehicle is held to the "highest degree of care.") [6]

The threshold issue to be resolved, however, is whether a police officer breaches this duty when he conducts a 100 m.p.h. chase after a traffic violator. There are no Missouri cases on point and the case law in other jurisdictions is split. Moreover, the cases on point tend to base their decisions on statements of policy with no explicit analysis or rationale to support the statements. The majority of courts that find no cause of action in negligence hold as a matter of law that the actions of the pursuing police officers were not the proximate cause of the injury, inferentially indicating that the actions of the driver of the pursued vehicle were the proximate cause of the injury. *Chambers v. Ideal Pure Milk Co.,* 245 S.W.2d 589, 591 (Ky.App.1952); *Wrubel v. State,* 11 Misc.2d 878, 174 N.Y.S.2d 687, 689 (N.Y.Ct.Cl.1958). *But see, City of Miami v. Horne,* 198 So.2d 10, 13 (Fla.1967) (no breach of duty of care). In these cases, the courts emphasize the importance of a police officer's duty to apprehend law violators and assert that as long as an officer operates his own vehicle with due care he is not responsible for the conduct of the culprit he chases. *Chambers v. Ideal Pure Milk Co., supra* at 591; *City of Miami v. Horne, supra* at 13.[7] Imposition of liability under these circumstances, it is argued, would encour-

---

**6.** None of the defendants make a fully developed argument that plaintiffs' decedent was an "unforeseen plaintiff" to whom the police officers owed no duty. If defendants did make this argument, they would not prevail. Admittedly, in Missouri, we do not accept the principle of a generalized duty of due care; i.e., "if defendants should anticipate that certain conduct is fraught with unreasonable probability of *some* harm to *somebody,* then the duty to refrain from that conduct is owed to anyone who may in fact be hurt by it." (Emphasis theirs). 2 *Harper and James, supra* at 1136. We do limit the scope of a defendant's duty "to do or refrain from doing a given act to . . . those persons or interests that are likely to be endangered by the act or omission." *Id.* at 1136. *See, e.g., Scheibel v. Hillis,* 531 S.W.2d *supra* at 288. Recognizing this limitation on a defendant's duty, we still take a broad view of the class of risks or victims to be foreseen. *E.g., LaPlant v. E.I. DuPont De Nemours and Company,* 346 S.W.2d 231, 241 (Mo.App.1961). Placing plaintiffs' decedent, standing in the road like a pedestrian, within the scope of the

duty the police officers owed to those using the highways is consistent with this view.

**7.** *Wrubel v. State, supra* at 689 contains a representative discussion:

"In the presence of a violation of law it is the officer's duty to take steps to suppress the offense and apprehend the offender. At its inception the offense being committed was only a traffic infraction. However, it developed, in the opinion of the Court, into reckless driving, a misdemeanor, also into resisting an officer, and other crimes which could be made out of the incident as it developed.

Claimants' predication of liability on the State is founded on the novel position that the trooper, in attempting to halt one increasing the danger on the highway, did by his attempt alone increase the danger himself. To extend this position to the ultimate would require a police officer to pursue, at an otherwise lawful rate of speed, a lawbreaker traveling at an unlawful rate of speed, or to ignore him in the first place. . . .

age dereliction of duty *see U.S. v. Hutchins,* 268 F.2d 69, 72 (6th Cir.1959); *See Chambers v. Ideal Pure Milk Co., supra* at 590 and inhibit police officers from acting resolutely and promptly in an emergency. *Wrubel v. State, supra* 174 N.Y.S.2d at 690.

The courts which find a cause of action in negligence place primary importance on the police officer's duty of care to the general public *Gibson v. City of Pasadena,* 83 Cal. App.3d 65, 148 Cal.Rptr. 68, 73 (App.1978) and stress that the duty to apprehend law violators is not one which must be carried out "regardless of risk or cost." *Kuzmics v. Santiago,* 389 A.2d 587, 589–590 (Pa.Super. 1978). High speed pursuits, it is argued, create a risk of harm to the public which is not justified when the pursuee is a mere traffic violator. The risk is unreasonable and can, therefore, support a cause of action for negligence. *See Gibson v. City of Pasadena, supra* 148 Cal.Rptr. at 72; *Myers v. Town of Harrison,* 438 F.2d 293, 296 (2d Cir.1971); *Kuzmics v. Santiago,*[8] *supra* at 390. These assertions are for the most part presented in conclusory terms and the term "unreasonable risk" is not defined.

■ The Restatement defines unreasonable risk and negligence as follows:

"Where an act is one which a reasonable man would recognize as involving a risk of harm to another, the risk is unreasonable and the act is negligent if the risk is of such magnitude as to outweigh what the law regards as the utility of the act or of the particular manner in which it is done." Restatement of Torts, Second § 291.

We accept this definition in Missouri. *Hyde v. City of Columbia,* 637 S.W.2d 251, 268–269 (Mo.App.1982). Thus, according to the Restatement, we determine the reasonableness of a defendant's actions by balancing the magnitude of the risk created by his conduct against the utility of his conduct.[9] Where conduct furthers an important societal goal, our law makers have determined that "the game is worth the candle;" Prosser, Law of Torts, § 31, p. 148 (4th ed. 1971) citing Restatement of Torts (Second), § 291, Comment *a,* and a heightened risk of injury is acceptable. By enacting § 304.-022, our legislature has made a policy judgment that the risk of injury inherent in high speed pursuits will be tolerated in the interests of promoting law and order. This tolerance, however, is limited. A heightened risk of injury is acceptable only so long as it does not become unreasonable— only so long as the utility of the conduct continues to outweigh the magnitude of the risk. A pursuit can become negligent if the utility of the conduct drops, where a policeman realizes the chase has become futile and nevertheless continues the chase, *Mason v. Bitton,* 85 Wash.2d 321, 534 P.2d 1360, 1364 (Wash. banc 1975) or where the circumstances raise the magnitude of the risk beyond acceptable levels; for example, the chase continues into an area which the officers knew or should have known is highly congested with both pedestrian and ve-

A police officer has a right to use whatever means necessary to make an arrest and unless he exceeds proper and rational bounds or acts in a negligent, careless or wanton manner, he is not liable for damages sustained, even by innocent parties, under the circumstances that arose herein."

8. In this case, the court quotes the following statistics taken from a "Survey by Physicians for Automotive Safety reported to American Medical Association annual convention, June, 1968," as quoted in 1 Meyer, Law of Vehicle Negligence in Pennsylvania, § 4.32, p. 14 (1970).

"More than 500 Americans die and over 1,000 sustain major injuries each year as a result of rapid police pursuit of lawbreakers, most of whom are guilty of only minor traffic offenses ... one pursuit in five leads to a traffic fatality (and) in only one percent of the cases was someone in the car wanted for violent crimes .... Twenty percent of the pursued cars had been stolen."

9. Prosser asserts this same proposition stating:

"It is fundamental that the standard of conduct which is the basis of the law of negligence is determined by balancing the risk, in the light of the social value of the interest threatened, and the probability and extent of the harm, against the value of the interest which the actor is seeking to protect, and the expedience of the course pursued." Prosser, Law of Torts, § 31, p. 149 (4th ed. 1971).

hicular traffic because of a shift change in a local factory, *Kuzmics v. Santiago, supra* at 590–591.

■ Although plaintiffs' third allegation is couched in terms of the general balancing test used to determine negligence, this allegation does not state a cause of action because it alleges no facts which raise the magnitude of the risk beyond that contemplated in § 304.022. Other than those facts contemplated by § 304.022, plaintiffs' allegations are mere conclusions which do not state a cause of action. *Smith v. Consolidated School District No. 2,* 408 S.W.2d 50, 56 (Mo. banc 1966). For example, plaintiffs do not allege the traffic conditions on Manchester Road nor do they allege the conditions of the road. *See, e.g., Meyers v. Town of Harrison, supra* at 295 (chase conducted in residential area over narrow, winding and wet roads). The fact that the driver of the pursued vehicle is a mere traffic violator does not in itself make the risk unreasonable because § 304.022 applies to high speed pursuit after "actual or suspected law violator[s]" and traffic law violators are not specifically excepted. Moreover, § 304.022.4(2)(c) places no numerical limit on a police officer's authority to exceed the speed limit. Therefore, extreme speed, in this instance, in and of itself is not a breach of the duty of care. The circumstances alleged by plaintiffs have already been figured into the balancing test and the legislature has determined that they do not create an unreasonable risk of harm. We hold that plaintiffs' first and third allegations under respondeat superior are insufficient to support a cause of action for negligence.

■ Plaintiffs' second allegation of negligence under the doctrine of respondeat superior alleges the police officers were negligent because they "failed to attempt to receive instructions from [their] supervisors" during the course of the pursuit. Assuming the police officers had this duty, their breach of this duty would not be the basis for negligence. If the police officers had requested advice from their supervisors, the officers may have been told to conduct the chase in a different manner, at a different speed or to discontinue the chase. But, if as demonstrated, the police officers' alleged actions in chasing the law violator were not in themselves negligent, then the failure to follow the supervisors' assumed directions to do otherwise would not be negligent. It would just be a failure of the officers to do their duty in another manner. The police officers' failure to seek advice might be a basis for departmental discipline but it would not be and is not a basis for negligence in the present pleadings.

## ALLEGATIONS OF "PRIMARY" NEGLIGENCE

■ As noted, plaintiffs' allegations of "primary" negligence against the municipalities were their failure to have a policy governing the proper conduct of high speed pursuits and their failure to properly supervise the police officers during the course of this particular pursuit. These pleadings do not serve as a basis for negligence for the same reason the police officers' failure to request advice was not a pleading of negligence. If the police officers' manner of conducting the chase did not in itself plead negligence, then the failure to have a policy governing the conduct of high speed pursuits or the municipalities' failure to supervise the police officers during the high speed pursuit does not plead negligence. The failure to have a policy and the failure to supervise the officers may have been a cause for the police officers' failure to conduct this chase in a different manner, but, as long as the manner they conducted the chase was not negligent, the failure to conduct the chase in a different manner would not be negligent.

This case is before us on appeal of the trial court's order dismissing plaintiffs' first amended petition. Although plaintiffs have already had one chance to amend their petition, in the interests of justice, we remand to allow plaintiffs to replead their cause of action in accordance with this opinion. *See, e.g., Lynch v. St. Louis Public Service Co.,* 261 S.W.2d 521, 524 (Mo.App.

1953). We do this because the issue is novel in Missouri. The scope of the officers' duty and defendants' liability were not defined prior to this opinion so that the plaintiffs did not have a reliable guide for pleading a breach of duty. Plaintiffs will plead a breach of duty only if they allege additional facts which raise the magnitude of the risk beyond that contemplated in § 304.022 and, thus, allege the creation of an unreasonable risk of harm.

Assuming on remand plaintiffs can plead a breach of duty, we address and hopefully lay to rest defendants' arguments on the issues of immunity, proximate cause and improper splitting of the cause of action. If plaintiffs can properly plead a breach of duty, we find their cause of action would not be barred by sovereign or official immunity or lack of proximate cause. However, we do find plaintiffs improperly split their cause of action and affirm dismissal of the counts brought by the children.

### IMMUNITY

■ "Both [plaintiffs and defendants] have clouded the issues on appeal by indiscriminately co-mingling the doctrines of sovereign immunity and official immunity." *Jackson v. Wilson,* 581 S.W.2d 39, 42 (Mo. App.1979). Sovereign and official immunity have been treated as distinct legal concepts. *Id.* at 42. While sovereign immunity protects the government itself from tort liability, official immunity is called into play only when public officials themselves are sued. *Id.* at 42. Moreover, "[i]mmunities are always personal to the holder" W. Seavey, *Law of Agency,* § 93 (1964); thus, when the sovereign is sued for the tortious acts of one of its officials, the sovereign can take advantage of immunities afforded to it but should not be able to benefit from any personal immunities enjoyed by the official. *See Rosenblum v. Rosenblum,* 231 Mo.App. 276, 96 S.W.2d 1082, 1084 (Mo.App.1936) (where employee negligently injures his wife within the scope of his employment, the employer is subject to liability though the employee is immune from suit). *Accord,* Restatement (Second) of Agency, § 217 (1958). Since plaintiffs·have chosen to sue the municipalities rather than the police officers themselves, the issue here is sovereign immunity, not official immunity.[10]

Application of the doctrine of sovereign immunity to municipalities has led to a "maze" of inconsistent decisions "which defy understanding" *O'Dell v. School District of Independence,* 521 S.W.2d 403, 417 (Mo. banc 1975) (Finch, J., dissenting). There are several causes for this confusion not the least of which is the dual nature of a municipality and the inherent imprecision in the language used to distinguish sovereign immunity from official immunity. We do not attempt to solve the problem here but set out some basic principles which clarify the issues here.

A municipality functions as a body politic, as an organ of government, and also as a body corporate, an artificial personality or corporation; "hence it has dual obligations" 18 McQuillin, *Municipal Corporations,* § 53.-01a (3d ed. 1977). Through the years these dual obligations have served as a basis to chip away at sovereign immunity as applied to municipalities. *See Jones v. State Highway Commission,* 557 S.W.2d 225, 229 (Mo. banc 1977). Since "[a] municipal corporation, by its nature, can perform both proprietary and governmental functions," in deciding if a municipality can be sued in a particular instance "a court must look to

**10.** Plaintiffs cite *Cannada v. Moore,* 578 S.W.2d 597 (Mo. banc 1979) on the issue of the police officers' immunity from suit for injuries resulting from their negligence during a high speed pursuit. In *Cannada,* a police officer was held liable for injuries caused when plaintiff was struck by a vehicle being pursued by another police officer. The defendant police officer had set up a roadblock and negligently failed to warn plaintiff of the oncoming danger. Although the facts in *Cannada* are similar to the facts now before us, *Cannada* is not controlling on the issue of immunity here. In *Cannada,* the police officer himself was being sued, and if immunity had been raised as an issue in that case, it would have been official immunity. Sovereign immunity was not an issue in *Cannada. See Newson v. City of Kansas City, infra* at 490.

the nature of the activity performed to determine in which capacity the city has acted." *St. Joseph Light v. Kaw Valley Tunneling,* 589 S.W.2d 260, 267 (Mo. banc 1979). "A governmental duty is one which is performed for the common good of all. A duty will be deemed proprietary if it is performed for the special benefit or profit of the municipality as a corporate entity." *Davis v. City of St. Louis,* 612 S.W.2d 812, 814 (Mo.App.1981). A municipality may be held liable for torts arising out of the performance of proprietary functions but no recovery is allowed for injuries which result from the performance of governmental functions. *See Dallas v. City of St. Louis,* 338 S.W.2d 39, 41 (Mo.1960).

■ Official immunity is said to be determined by a discretionary-ministerial test rather than the governmental-proprietary test. *E.g., Jackson v. Wilson,* 581 S.W.2d 39, 42 (Mo.App.1979). Under the official immunity test, one must determine whether a particular act is discretionary, i.e., requiring the official to exercise his judgment as part of a decision-making process, or ministerial, i.e., required to be performed without the exercise of judgment. An official is immune from liability for torts arising out of a discretionary act but he is subject to liability for negligently performing ministerial acts. *Newson v. City of Kansas City,* 606 S.W.2d 487, 490–491 (Mo.App.1980); *Jackson v. Wilson, supra* at 42.

The sovereign immunity and official immunity tests are easily stated but difficult to apply.[11] One source of the confusion stems from the discretionary-ministerial test, developed for determining official immunity, being used to determine whether

an activity is proprietary or governmental.[12] *See St. Joseph Light v. Kaw Valley Tunneling, supra* at 267 (construction of sewers is a *ministerial* act and, therefore, a *proprietary* function, but broad planning decisions on whether to build a sewer system, the extent of the system and the amount to be spent are *governmental* acts); *see also Ely v. City of St. Louis,* 181 Mo. 723, 81 S.W. 168, 169 (Mo.1904); *Bullmaster v. City of St. Joseph,* 70 Mo.App. 60, 67–68 (Mo.App. 1897). This confusion is heightened by some early cases that fail to use the governmental-proprietary labels. These courts speak of the dual functions of municipalities as governmental and ministerial. *See Barree v. City of Cape Girardeau,* 197 Mo. 382, 95 S.W. 330, 331 (Mo.1906); *Metz v. Kansas City,* 229 Mo.App. 402, 81 S.W.2d 462, 465 (Mo.App.1935); *Ely v. City of St. Louis, supra* 81 S.W. at 169.

Recently, however, our Supreme Court, in abrogating sovereign immunity in *Jones v. State Highway Commission, supra* at 227, described the doctrine as applied to municipalities as one in which liability or non-liability depends on the governmental-proprietary dichotomy. *See also Coleman v. McNary,* 549 S.W.2d 568, 569–570 (Mo.App. 1977). With two express exceptions, § 537.600 reinstates sovereign immunity as it existed before *Jones.* By implication, § 537.600 reinstates the governmental-proprietary test as well, and this is the law in Missouri today. *State ex rel. Allen v. Barker,* 581 S.W.2d 818, 825 (Mo. banc 1979).

The parties' detailed arguments, notwithstanding, the issues here center on the operation of a police force, and the operation

---

11. *See O'Dell v. School District of Independence, supra* at 417–419 for a collection of logically inconsistent applications of the sovereign immunity test. As to the official immunity test, "[i]t would be difficult to conceive any official act, no matter how directly ministerial, that did not admit of some discretion in the manner of its performance, even if it involved only the driving of a nail." Prosser, *Law of Torts,* § 132, p. 990 (4th ed. 1971). *See e.g., Jackson v. Wilson, supra* at 43.

12. The United States Supreme Court recently stated that the discretionary-ministerial test is

an alternate test for sovereign immunity grounded on consideration of separation of powers, i.e., to assure that courts will not pass judgment on policy decisions which fall within the province of coordinate branches of government. *Owen v. City of Independence, Mo.,* 445 U.S. 622, 100 S.Ct. 1398, 1414, 63 L.Ed.2d 673 (1980), (reh. den. 446 U.S. 993, 100 S.Ct. 2979, 64 L.Ed.2d 850). *See also Civil Actions against State Government,* § 2.24 p. 48–49 (W. Winborne ed. 1982). We find no evidence of this view in Missouri cases.

and maintenance of a police force is a governmental function. *Carmelo v. Miller,* 569 S.W.2d 365, 368 (Mo.App.1978). Confronted with a governmental function, we need not address or discuss the question of whether the particular activity required the exercise of discretion or was simply ministerial.[13] *Hinds v. City of Hannibal,* 212 S.W.2d 401, 403 (Mo.1948); *Carmelo v. Miller, supra* at 368.

■ The police officers referred to in plaintiffs' petition were municipal agents engaged in a governmental function. The three municipal defendants are immune from suit for the negligence of these officers except where this immunity is expressly waived by statute.[14]

## WAIVER OF SOVEREIGN IMMUNITY

Sections 537.600(1) and (2) set forth the limits our legislature has placed on sovereign immunity. *Johnson v. Carthell,* 631 S.W.2d 923, 926 (Mo.App.1982). The present pleadings require us to consider only the reach of § 537.600(1).[15]

Section 537.600(1) waives the immunity of the public entity for "[i]njuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles within the course of their employment." Whether this waiver of immunity applies to the operation of a police vehicle engaged in a high speed pursuit of a suspected law violator is a question of first impression in Missouri. Does the phrase "arising out of the operation of motor vehicles" include plaintiffs' allegations of a police vehicle engaged in a high speed pursuit, the failure of a police officer to request and of his superior to offer instructions and failure of a municipality to have a pursuit policy?

■ The meaning of "operation of motor vehicles" as used in § 537.600(1) has been determined by using the construction of similar language used in § 304.010. *Johnson v. Carthell, supra* at 926. "Operating" or "driving" a motor vehicle within the meaning of § 304.010 encompasses ". . . all acts necessary to be performed in the movement of a motor vehicle from one place to another or fairly incidental to the ordinary course of its operation . . . ." *Karnes v. Ace Cab Company,* 287 S.W.2d 378, 380 (Mo.App.1956). The opening of the doors of a parked taxi *See id.* at 380 and the opening of the rear doors of a parked truck, *Teters v. Kansas City Public Utilities Service Company,* 300 S.W.2d 511 (Mo.1957), are among the acts found to be incidental to the ordinary course of the operation of a motor vehicle. *See Johnson v. Carthell, supra* at 927. In addition to these specific interpretations, we are guided by the general axiom that statutes which waive sovereign immunity are to be strictly construed. *Beiser v. Parkway School District,* 589 S.W.2d 277, 280 (Mo. banc 1979). Viewed with this background, the acts or omissions of supervisory personnel not present in the police vehicle, i.e., failure of police supervisors to offer instructions and failure of the police department to have a pursuit policy can hardly be said to constitute participation in the operation of the vehicle. This interpretation is reinforced by the definition of the word "operator" which is defined in our statutes as "a person who is in *actual physi-*

---

**13.** The same is true where the operation of a fire department is discussed. *See Newson v. City of Kansas City, supra* at 489; *Light v. Lang,* 539 S.W.2d 795, 798 (Mo.App.1976); *Richardson v. City of Hannibal,* 330 Mo. 398, 50 S.W.2d 648, 649 (Mo. banc 1932).

**14.** If the police officers themselves had been sued rather than the municipality, the discretionary-ministerial test would be applied and they would be immune "from tort liability from discretionary acts in the performance of [this] governmental duty." *Newson v. City of Kansas City,* 606 S.W.2d at 490 (Mo.App.1980). It is not clear from *Newson* whether a municipal employee can be held liable when he performs a discretionary activity in the course of a proprietary function. From the personal nature of immunities discussed above, it would seem to follow that the sovereign and official immunity tests are mutually exclusive. However, a careful review of Missouri case law reveals no clear statement to this affect and we do not reach this question.

**15.** Section 537.600(2) concerns injuries caused by the defective condition of public property and is not relevant to the present case.

*cal control* of a motor vehicle" § 303.020(8). [Emphasis added]. Likewise, a police officer's failure to request instructions is not an omission to perform an act necessary to the movement of a motor vehicle or an act or omission fairly incidental to the ordinary course of its operation. Moreover, the instructions not requested and not given were, as alleged, instructions regarding the propriety of the pursuit itself, and not instructions on how to operate the vehicle. We, therefore, conclude the alleged failure to request and failure to receive instructions and the failure to have a pursuit policy, do not fall within the statutory waiver for sovereign immunity.

 Allegations of the initiation and continuation of the pursuit itself, however, fall within the § 537.600(1) waiver of sovereign immunity. In the absence of a statutorily prescribed definition, words used in statutes must be given their plain ordinary meaning. *State ex rel. C.C.G. Mgmt. v. City of Overland*, 624 S.W.2d 50, 53 (Mo. App.1981). According to the plain meaning of the words in § 537.600(1), a police officer who is pursuing a suspect at high speeds is "operating a motor vehicle." If plaintiffs' allegations properly plead the negligence of the high speed pursuit itself, these allegations would fall within the explicit waiver of § 537.600(1).

 One additional issue raised by the parties must be addressed. Section 71.-185 sets forth the limits of a municipality's liability for governmental functions when insurance is carried by the municipality. This statute makes a municipality liable for torts resulting from the exercise of a governmental function to the extent the municipality has purchased liability insurance against injury from the tortious exercise of a governmental function. Defendants potentially come within the purview of this statute because they were engaged in the exercise of a governmental function at the time of their alleged negligence. However, in order to plead a cause of action against a municipality for torts arising out of a governmental function, plaintiffs must affirmatively plead § 71.185 or plead facts which would bring them within the purview of the statute. *Newson v. City of Kansas City, supra* at 489. On appeal, defendants contend that plaintiffs' failure to plead § 71.-185 is fatal to their cause of action. Plaintiffs in turn claim defendants have waived this issue because it was not raised in their motions to dismiss in the trial court. Failure to state a cause of action may be raised at any time, even for the first time on appeal. *Eilers v. Kodner Development Corporation*, 513 S.W.2d 663, 665 (Mo.App. 1974). However, on remand, plaintiffs may plead § 71.185 if appropriate. *See Newson v. City of Kansas City, supra* at 491. If properly plead, § 71.185 would impose liability on defendants to the extent of their insurance coverage on those allegations of negligence defining an exercise of a governmental function and not specifically within the purview of § 537.600(1).

 Plaintiffs argue that under § 71.185 defendants could be held liable for failure to have a pursuit policy. We disagree. Plaintiffs have not cited and our research has not uncovered any cases to support such a broad interpretation of § 71.185. This lack of case law is understandable. A municipality is "immune" from suit at the policy making level because, initially, it has no affirmative duty to formulate any particular policy pursuant to its legislative function. There may be a social or moral obligation to perform this particular function but this has never been a basis for tort liability. Restatement of Torts, Second, § 314. In the absence of a duty to formulate a pursuit policy, defendants cannot be held liable for failure to have such a policy, *See Hyde v. City of Columbia, supra* at 255, regardless of whether § 71.185 is applicable or not. However, if plaintiffs succeed on remand to plead a cause of action based on their remaining allegations—failure of the police officers to request and of their supervisors to offer instructions—these allegations would come within the meaning of failure "to *exercise* a governmental function." Sensibly construed, the "exercise" of a governmental function simply means the imple-

mentation or carrying out of that function. If § 71.185 is properly plead, the municipalities' immunity as to these activities would be waived to the extent of their insurance coverage.

## PROXIMATE CAUSE

█ Apparently, defendants denied liability below on the grounds that the death of plaintiffs' decedent was proximately caused by the acts of the fleeing suspects and not by the pursuit, of the officers. Although not explicitly articulated, defendants appear to argue that the operation of the pursued vehicle was an independent voluntary act which intervened between the pursuing police officers' acts and the accident in question and, thus, the operation of the pursued vehicle was the direct and "proximate" cause of the death of plaintiffs' decedent. We agree that the operation of the pursued vehicle was voluntary but we do not believe these acts of the fleeing suspects in operating their vehicle were so extraordinary that the police officers' acts were, as a matter of law, not the proximate cause of the death in question.

█ Liability for negligence is limited to injuries which are reasonably foreseeable. *E.g., Green v. Kahn,* 391 S.W.2d 269, 277 (Mo.1965); *See Dickerson v. St. Louis Public Service Co.,* 286 S.W.2d 820, 824 (Mo. banc 1956). In Missouri, foreseeability of the injury is discussed both as a function of duty and as a function of proximate cause.

*E.g., Dix v. Motor Market, Inc.,* 540 S.W.2d 927, 931–933 (Mo.App.1976); *Phillips v. Stockman,* 351 S.W.2d 464, 472 (Mo.App. 1961). Thus, our courts use foreseeability either to limit the scope of defendants' duty "to the protection of [a plaintiff] from reasonably foreseeable danger," *Irby v. St. Louis County Cab Co.,* 560 S.W.2d 392, 394 (Mo.App.1977); *Hull v. Gillioz,* 344 Mo. 1227, 130 S.W.2d 623, 628 (Mo.1939) and also limit defendant's liability to "legally" or "proximately caused" injuries by stating "that in order for an act to constitute the proximate cause of an injury some injury . . . must have been reasonably foreseeable." *Dickerson v. St. Louis Public Service Co., supra* at 824. We focus here on proximate cause.

█ When a new force intervenes between a defendant's negligent acts and causes an injury that the defendant's acts might not otherwise have produced, the defendant is held liable for injuries only where the intervening force was foreseeable.[16] *See, e.g., Chambers v. Bunker,* 598 S.W.2d 204, 207 (Mo.App.1980); *Dickerson v. St. Louis Public Service Co., supra* at 824. Stated otherwise, "a new and unforeseeable force breaks the causal chain." 2 Harper and James, *The Law of Torts,* § 20.5, p. 1142–1143 (1974).[17] "Foreseeability, however, does not mean that the precise hazard or the exact consequences which were encountered should have been foreseen." *Id.* at 1147. "[I]t is immaterial that the precise

---

**16.** Our courts apply this "foreseeability test both prospectively, *Dickerson v. St. Louis Public Service Co., supra* at 824 (the proximate cause question is: "could defendant's driver reasonably anticipate that. some injury to one or more passengers was probable when he stopped the bus where he did"), and retrospectively *Green v. Kahn, supra* at 277 ("the test is not whether a reasonable and prudent person would have foreseen the particular injury, but whether, after the occurrences, the injury appears to be the reasonable and probable consequences· of the act or omission of the defendant.") The Restatement, in its section on proximate cause, puts emphasis on what seems "extraordinary" in the light of hindsight. Restatement of Torts (Second) § 442(b). In analysis and application, these tests usually produce the same results. "When we have hindsight, nothing is extraordinary, for we can see

each step following inevitably on the other; when, after an event, we say 'What a highly extraordinary result,' we mean that a person before the event could not have expected it." *Goodhart,* The Restatement of the Law of Torts, II, 83 V.Pa.L.Rev. 968, 994 (1935).

**17.** "A better analysis is to regard the intervening force as a risk or hazard and to ask whether its foreseeability was such as to make defendant's act negligent with regard to it. It is better, in other words, to inquire whether defendant's duty extends to such a risk as the intervening force, because the question in this form focuses attention on a more significant and less fictitious problem than that of cause. But the result is likely to be the same." *Harper and James, supra* at 1143.

manner in which the injury occurred was neither foreseen nor foreseeable." *Phillips v. Stockman, supra* at 474. Furthermore, "if the foreseeable likelihood that a third person may act in a particular manner is one of the hazards which makes a person negligent, such an act of a third party, whether innocent, intentionally tortious or *criminal,* does not prevent that person from being liable for the harm caused thereby." [Emphasis added]. *Scheibel v. Hillis,* 531 S.W.2d 285, 288 (Mo. banc 1976).

■ We cannot say as a matter of law the pleaded operation of the pursued vehicle was an intervening cause which cut off the liability of the pursuing police officers. Plaintiffs' allegations assert the police officers' negligence was not only in the initiation of the pursuit but also in its continuation. While at the initiation stage it was foreseeable the youths might pull over and stop, as the pursuit continued it became apparent they would persist in attempting to escape. At this point, the hazards created by the high speeds of the pursued vehicle were no different than those created by the high speeds of the police vehicles and it was equally foreseeable that an accident involving either would occur. The intervention of the pursued vehicle brought about the same kind of harm which might otherwise have resulted from the negligence of the police officers, Restatement of Torts, Second, § 442(a) and the action of the youths at least in part grew out of a situation created by the police officers. *Id.* § 442(c); *See Chambers v. Bunker, supra* at 207. Moreover, this foreseeable action of the pursued vehicle is one of the hazards which would make the police officers negligent and, thus, this action does not prevent the police officers from being liable for the resulting death of plaintiffs' decedent. *Scheibel v. Hillis,* 531 S.W.2d at 288. *See also Zuber v. Clarkson Constr. Co.,* 251 S.W.2d 52, 55 (Mo. 1952); *See* Restatement of Torts (Second) § 449.

If plaintiffs can properly plead and prove the negligence of the police officers, the question of proximate cause here would be a jury question. *See, e.g., Dickerson v. St.* *Louis Public Service Co., supra* at 826; *Phillips v. Stockmann, supra* at 473. This is not to say that plaintiffs would not be barred from recovery for their decedent's death because of his possible contributory negligence or assumption of risk.

## COUNTS BROUGHT BY MINOR CHILDREN

■ As noted above, the causes of action against each defendant were plead in two counts—one by the widow and the second by the minor children. The trial court dismissed the counts brought by the children as an improper splitting of the cause of action. Plaintiffs appeal this ruling. We affirm.

Section 537.080 RSMo 1978 which was in effect when this cause of action occurred provides:

"Whenever the death of a person shall be caused by a wrongful act, neglect or default of another, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who or the corporation which would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, which damages may be sued for and recovered.

(1) By the spouse or minor children, natural or adopted of the deceased, *either jointly or severally;* provided, that in any such action the petitioner shall satisfy the court that he has diligently attempted to notify all parties having a cause of action under this subdivision; and provided further that *only one action may be brought under this subdivision against any one defendant."* [Emphasis added].

Since this statute creates a cause of action in derogation of the common law, it must be strictly construed. *State ex rel. Jewish Hospital, etc., v. Buder,* 540 S.W.2d 100, 104 (Mo.App.1976). Plaintiffs construe the words "jointly or severally" in § 537.080 to allow a spouse and minor children to sue jointly or in the alternative to bring sepa-

rate causes of action on the same claim. Admittedly, the literal meaning of the statutory language is susceptible to plaintiffs' interpretation. However, we reject plaintiffs' argument.

The more sensible interpretation of the use of the phrase "jointly or severally" in § 537.080 is that only one cause of action may be brought but it may be brought by either the living spouse and minor children jointly or by any one of them alone. This follows from the fact that § 537.080 specifically provides "that only one action may be brought under this subdivision against any one defendant." Moreover, this section has been construed by our Supreme Court to provide for "one indivisible claim for the death of a person which occurs on the date of death." *State ex rel. Kansas City Stock Yards v. Clark*, 536 S.W.2d 142, 145 (Mo. banc 1976); *See Wessels v. Gipfel*, 522 S.W.2d 653, 654 (Mo.App.1975). Furthermore, § 537.095 RSMo 1978 provides for *one* assessment of total damages by the trier of facts followed by an apportionment of these damages "among those persons entitled thereto as determined by the court." *Bowling v. Webb Gas Company, Inc. of Lebanon*, 505 S.W.2d 39, 41 (Mo.1974). Finally, in apparent acknowledgment of a possible ambiguity in meaning, our legislature, in a 1979 amendment to the statute, deleted the phrase "jointly or severally," See § 537.080(1) RSMo 1982 Supp. but still retained the provision that only one action may be brought "against any one defendant for the death of any one person" § 537.-080(3) RSMo 1982 Supp.

The Wrongful Death Statute in question allowed, as it allows now, only one cause of action and one judgment against any defendant for the death of any one person. Since plaintiffs brought two counts against each defendant, praying for a separate judgment in each, their petition contravenes § 537.080 and the counts brought by the children were properly dismissed.

Accordingly, we reverse the trial court's dismissal of Counts V, VII and IX and affirm the court's dismissal of Counts VI, VIII and X. We remand this cause for further proceeding not inconsistent with this decision.

SMITH, P.J., and PUDLOWSKI, J., concur.