**Robert A. LAMAR, Plaintiff–Appellant,**

**v.**

**CITY OF ST. LOUIS,
Defendant–Respondent.**

**No. 53200.**

Missouri Court of Appeals,
Eastern District,
Division One.

March 8, 1988.

Marc S. Wallis, St. Louis, for appellant.

James J. Wilson, City Counselor, Edward J. Hanlon, Assoc. City Counselor, Patricia A. Rogers, Asst. City Counselor, St. Louis, for respondent.

REINHARD, Judge.

Plaintiff appeals after the trial court granted defendant City of St. Louis's motion for summary judgment and dismissed plaintiff's petition. We reverse and remand.

In his first amended petition, plaintiff, a laborer at the time for Corrigan Co., alleged that on April 25, 1978, he was working in a ditch at Fourth and Washington streets in St. Louis when the ditch caved in on him, causing serious, permanent injury. He named the City of St. Louis, the Metropolitan Sewer District of St. Louis, and two private contractors as defendants, alleging "the defendants, and each of them" negligently failed to reinforce the sides of the ditch and failed to warn him about the condition of the ditch. After the claims against the sewer district and the two private contractors were dismissed, leaving only the city as a defendant, plaintiff again amended his petition to add the following allegation:

4(e). Defendant City of St. Louis maintained a barricade and personnel to keep traffic from traveling upon the

street and lane adjacent to where plaintiff was working in order to keep said area and workplace reasonably safe and free of vibration, and said defendant negligently removed its barricade and personnel, and thereby failed to keep traffic from the street and lane adjacent to where plaintiff was working without telling, warning or giving notice thereof to plaintiff and as a result vibration from traffic on said street and lane caused the cave-in.

In a motion for summary judgment the city sought dismissal of plaintiff's petition because "[p]laintiff has alleged that the defendant City of St. Louis was negligent in the regulation of traffic on a public street adjacent to a construction site [and] [t]raffic regulation, direction, or control is a governmental function for which the City is not liable in tort." The trial court granted the city's motion.

On appeal, plaintiff contends

The trial court erred in sustaining defendant City of St. Louis's motion for summary judgment for the reason that as a matter of law the City of St. Louis is not immune from suit based on sovereign immunity because, the City of St. Louis, in performing the acts in improperly barricading an excavation on its street and in negligently maintaining and performing construction on its sewers and water mains was performing a proprietary function for which it can be held liable in tort.

Plaintiff correctly states the sole question before us: whether the alleged negligent acts were performed by the city in a proprietary or a governmental capacity. If the city was performing a proprietary function, it is not shielded by the doctrine of sovereign immunity. *Oberkramer v. City of Ellisville*, 650 S.W.2d 286, 295 (Mo.App. 1983). Because plaintiff's alleged injury occurred April 25, 1978, we are guided by the common law as it existed at the time of *Jones v. State Highway Commission*, 557 S.W.2d 225 (Mo. banc 1977), which abrogated sovereign immunity in Missouri prospectively effective August 15, 1978. *See Verda v. Missouri Highway and Transporta-*

*tion Commission*, 715 S.W.2d 18 (Mo.App. 1986). We note that § 537.600, RSMo 1978, as enacted June 8, 1978, and amended in 1985, does not apply because § 537.600 has prospective application only. *State ex rel. Missouri Highway and Transportation Commission v. Appelquist*, 698 S.W. 2d 883, 896–98 (Mo.App.1985).

To determine whether the city was acting in a proprietary or governmental capacity, we look to the nature of the activity. As we stated in *Oberkramer*

A municipality functions as a body politic, as an organ of government, and also as a body corporate, an artificial personality or corporation; "hence it has dual obligations." Through the years these dual obligations have served as a basis to chip away at sovereign immunity as applied to municipalities. Since "[a] municipal corporation, by its nature, can perform both proprietary and governmental functions," in deciding if a municipality can be sued in a particular instance "a court must look to the nature of the activity performed to determine in which capacity the city has acted." "A governmental duty is one which is performed for the common good of all. A duty will be deemed proprietary if it is performed for the special benefit or profit of the municipality as a corporate entity." A municipality may be held liable for torts arising out of the performance of proprietary functions but no recovery is allowed for injuries which result from the performance of governmental functions.

650 S.W.2d at 294–95 (citations omitted).

As a general rule, the regulation of traffic is a governmental function for which a municipality is immune from tort liability. *Watson v. Kansas City*, 499 S.W.2d 515 (Mo.1973); *Gillen v. City of St. Louis*, 345 S.W.2d 69 (Mo.1961). This general principle has been held to preclude recovery from a municipality when a traffic control device, negligently created and maintained by the municipality, failed to prevent an automobile operated by a third party from striking a person. *Hiltner v. Kansas City*, 293 S.W.2d 422, 425–26 (Mo. 1956) (plaintiff standing in a "streetcar

safety zone"); *Blackburn v. City of St. Louis,* 343 Mo. 301, 121 S.W.2d 727, 730–31 (1938) (plaintiff standing on a sidewalk). We believe *Hiltner* and *Blackburn* are applicable to plaintiff's allegations as stated in paragraph 4(e).

 Summary judgment was inappropriate, however, because of matters plaintiff alleged in his petition outside paragraph 4(e). The city's motion for summary judgment attacked only paragraph 4(e), characterizing plaintiff's claim as limited to an allegation that the city was negligent in the regulation of traffic. However, plaintiff also claimed the city was negligent in the construction and maintenance of the ditch in which he was working. When a municipality is engaged in sewer construction, it is involved in proprietary activity. *St. Joseph Light & Power Co. v. Kaw Valley Tunneling, Inc.,* 589 S.W.2d 260, 266 (Mo. banc 1979). We believe the same is true when the city is engaged in the construction or operation of a water system. In response to plaintiff's interrogatories, the city admitted that its Department of Public Utilities, Water Division, "had responsibility for the work being performed at the excavation" and that the city had "specifications for the project."

Applicable principles of law governing appellate review of a summary judgment are well established. A summary judgment is appropriate only where documents on file, including pleadings, depositions, admissions, and affidavits, show there is no genuine issue of material fact and that any party is entitled to summary judgment as a matter of law. Rule 74.04(c); *Edwards v. Heidelbaugh,* 574 S.W.2d 25, 27 (Mo.App. 1978). A genuine issue of material fact exists if there is the slightest doubt about the facts. *Edwards,* 574 S.W.2d at 27. The trial court and the appellate court must scrutinize the record in the light most favorable to the party opposing summary judgment and give that party the benefit of every doubt. *Id.* at 26–27. The burden is on the movant to show by unassailable proof that there is no genuine issue of fact. Rule 74.04(h); *Edwards,* 574 S.W.2d at 27.

Based on the record before us, we are unable to determine as a matter of law that sovereign immunity bars plaintiff's claims as stated in his original first amended petition outside paragraph 4(e). Matters might be proven that would provide the city with immunity, but, on the record before us, the city is not entitled to summary judgment as a matter of law.

Reversed and remanded.

GARY M. GAERTNER, P.J., and CRIST, J., concur.